# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 31, 2007

Charles R. Fulbruge III
Clerk

No. 06-31018

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WAYNE LEE PALMER,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Louisiana

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This interlocutory appeal involves the district court's grant of the Government's motion to involuntarily medicate Wayne Lee Palmer to render him competent to stand trial. Because we conclude that this motion is constitutionally permissible under the particular circumstances shown in this record, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Palmer has had a long history of involvement with federal authorities. In October 2003, he entered the Clerk of Court's office for the Middle District of Louisiana, demanding to know why the pro se lawsuit he had previously filed had been dismissed. He became irate, and court security was called. As Palmer

was leaving the building, he threatened to kill a court security officer ("CSO") who had attempted to retrieve his visitor's badge. Federal authorities, including FBI Agent McNulty, were subsequently sent to Palmer's house to arrest him. Though Palmer initially resisted, he was eventually subdued and arrested; he had a semi-automatic handgun in his back pocket.

On October 29, 2003, Palmer was indicted on one count of threatening to murder a federal official, in violation of 18 U.S.C. § 115(a)(1)(B). He was found to be incompetent to stand trial, and committed to Butner Federal Medical Center ("Butner FMC") for a mental health evaluation. Dr. Angela Walden-Weaver, a clinical psychologist, and Dr. Robert Lucking, a psychiatrist, issued a report of their evaluation in August 2004, concluding that Palmer was suffering from a delusional disorder. Palmer was then referred for an evaluation to determine whether he was eligible for civil commitment under 18 U.S.C. § 4246. During that evaluation, he stated that he had no interest in acquiring another weapon, and based on that statement, as well as community support and his lack of a violent history, the clinicians found that Palmer's release would not create a substantial risk of bodily injury to another person or serious damage to the property of others. The indictment against Palmer was dismissed on November 19, 2004.

Less than a month later, Palmer bought a gun at a pawn shop in Baton Rouge. On the form accompanying the purchase, he falsely answered "no" to the question of whether he had ever been adjudicated mentally incompetent or committed to a mental institution.

On May 12, 2005, U.S. marshals, when securing the campus of Louisiana State University Law School for a Federal Bar Association seminar scheduled to be held there, found Palmer sitting in the driver's seat of a vehicle in the parking lot. When the marshals approached the vehicle and requested to speak with him, Palmer stated: "I know who you are and I am calling the police." The

marshals observed a gun on the front passenger seat, and drew their weapons and ordered Palmer out of the car. He disobeyed, and instead began driving away. The marshals pursued him, and he was apprehended. After they placed him under arrest, the marshals searched his vehicle, finding a firearm as well as a box of pistol ammunition and a loaded pistol magazine.

On May 26, 2005, Palmer was indicted on one count of possession of a firearm by a person adjudicated mentally defective, in violation of 18 U.S.C. § 922(a)(6), and one count of possession of a firearm and ammunition by a person that has been adjudicated as mentally defective and committed to a mental institution, in violation of 18 U.S.C. § 922(g)(4). Palmer's appointed counsel filed a motion to determine competency and notice of intent to use the insanity defense. The district court appointed Dr. John Thompson, Jr., Chief of Staff of the Eastern Louisiana Mental Health System and Vice Chair of Adult Psychiatry and Director of Forensic Neuropsychiatry at Tulane University, to examine Palmer and file a report with the court.

In his report, Dr. Thompson found that Palmer was incompetent to stand trial because he did not have a complete awareness of the charges against him, nor did he appreciate the seriousness of the charges. Dr. Thompson diagnosed Palmer with a form of schizophrenia. His report concluded that Palmer presented a danger to the public, and recommended that he be returned to Butner FMC with an order for forced medication. On August 18, 2005, the district court remanded Palmer to the custody of the Attorney General for an evaluation of his competency to stand trial.

Palmer was returned to Butner FMC, and once again evaluated by Dr. Walden-Weaver and Dr. Lucking, who also diagnosed him with a form of schizophrenia. In their report, the doctors recommended involuntary medication to render him competent to stand trial. Thereafter, Palmer filed a motion for a

competency hearing, while the Government filed a motion to involuntarily medicate Palmer to restore his competency for trial.

The magistrate judge conducted a competency hearing on February 2, 2006. The parties jointly introduced the reports from Palmer's previous evaluations, and stipulated that the sentencing guidelines range for the charged offenses was from fifteen to twenty-one months. Dr. Lucking testified for the Government, recommending that Palmer receive Haldol injections to restore competency. While he acknowledged that there were newer anti-psychotic drugs with less serious side effects available, Dr. Lucking testified that he preferred Haldol because of its overall efficacy. Dr. Thompson testified on behalf of Palmer. He also recommended involuntary medication, but preferred the use of a second-generation anti-psychotic drug, although he agreed that both Haldol and the newer medications would be sufficiently safe and effective. Agent McNulty testified about the charges brought against Palmer in 2003.

The magistrate judge issued a thorough and detailed report and recommendation where he found Palmer incompetent to stand trial and recommended involuntary medication to restore his competency. The district court adopted the magistrate judge's recommendation and, over Palmer's objection, granted the motion. Palmer now appeals.

## II. DISCUSSION

Even though the United States Supreme Court has recognized that inmates have an "important, constitutionally protected liberty interest in avoiding unwanted administration of antipsychotic drugs," it has held that involuntary medication does not violate the due process clause if the inmate is a danger to himself or others and treatment is in the inmate's medical interest. Washington v. Harper, 494 U.S. 210, 221, 226 (1990). In Sell v. United States, the Court explained that the involuntary medication of a defendant solely to render him competent to stand trial for a serious, but nonviolent, crime is

4

permissible in rare circumstances, "but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." 539 U.S. 166, 179 (2003). The Court declared that lower courts, when making such a determination must consider four factors: (1) whether important governmental interests are at stake; (2) whether involuntary medication will significantly further those interests; (3) whether involuntary medication is necessary to further those interests; and (4) whether the administration of the drugs is medically appropriate. Id.

Palmer does not contest the district court's finding that the administration of drugs is medically appropriate.[1] Thus, the issue before this court is whether the district court properly assessed the other three Sell factors: (1) that important governmental interests are at stake; (2) that involuntary medication will further the government's interest; and (3) that forced medication is necessary to further the government's interest. We have not had a prior opportunity to consider the appropriate standard of review for Sell cases. However, the Second Circuit has determined that whether the government's asserted interests are sufficiently important is a legal issue subject to de novo review, while the other Sell factors involve factual findings which are reviewed for clear error. United States v. Gomes, 387 F.3d 157, 160 (2d Cir. 2004). We formally adopt the standard set forth in Gomes, and apply it in this case.

In Sell, the Court recognized that there is an important governmental interest in ensuring that individuals accused of serious crimes are brought to trial. 539 U.S. at 180. In this case, the Government argues that the offense for which Palmer was charged is serious, as he faces a maximum sentence of ten

---

[1] He does argue that in the event he is involuntarily medicated, the newer drugs, rather than Haldol, should be used.

years and his behavior created a substantial risk of harm to himself and others. Palmer contends that because his United States sentencing guidelines range is only fifteen to twenty-one months, the Government is characterizing his crime more seriously than it actually was. While that may be, Palmer's argument still fails. Not only have courts held that crimes authorizing punishments of over six months are "serious," they have also concluded that it is appropriate to consider the maximum penalty, rather than the sentencing guidelines range, in determining "seriousness" in involuntary medication proceedings. See United States v. Evans, 404 F.3d 227, 237-38 (4th Cir. 2005); United States v. Algere, 396 F. Supp. 2d 734, 739 (E.D. La. 2005). Furthermore, given the fact that Palmer threatened the life of a federal officer and caused substantial disruption on and near the LSU campus, it is possible a court may find it appropriate, if he is convicted, to upwardly depart from the guidelines recommended sentencing range. Thus, we cannot conclude that the district court erred by finding that important governmental interests are at stake.

Neither do we conclude that the district court clearly erred by finding that Palmer's involuntary medication will significantly further the government's interest. In Sell, the Court explained that this factor requires the trial court to determine that the administration of the drugs is substantially likely to both render the defendant competent to stand trial as well as substantially unlikely to have side effects that would significantly interfere with the defendant's ability to assist his counsel. 539 U.S. at 181. Palmer argues that the lower court attached too little significance to the dangerous side effects accompanying the administration of anti-psychotic drugs, particularly Haldol. Dr. Lucking testified that there is a one-in-three chance that Palmer could develop extrapyramidal symptoms, such as tardive dyskinesia (involuntary movements) and akathisia (restlessness), if he is forced to take Haldol. While the newer drugs do not have as many neurological side effects, there are other, mainly

metabolic, side effects associated with those as well. Yet, all the doctors who testified at the hearing agree that no matter which drug is used, in the vast majority of cases the side effects can be treated or minimized. Palmer's argument fails because while he has demonstrated that the side effects will be unpleasant, he has not shown how his ability to assist in his defense will be substantially undermined by the medication.

Finally, we turn to the last factor: whether forced medication is necessary to further the government's interest. The Supreme Court has instructed that courts must only involuntarily medicate a defendant if "alternative, less intrusive treatments are unlikely to achieve substantially the same result." Id. It is undisputed that other treatment options, such as psychotherapy or education would be ineffective in restoring Palmer's competency. However, Palmer asserts that before resorting to involuntary medication, he should be re-evaluated for civil commitment. He also argues that if he is made competent it is probable that he will be found not guilty by reason of insanity, and even if he is convicted, given that he has been confined since May 2005, he will likely have already served his sentence. While there is some force to Palmer's contentions, we cannot conclude that the district court's determination was clearly erroneous. Palmer was considered for civil commitment in 2004 and found not to be a suitable candidate at that time. It is possible that a similar outcome will result if he is evaluated again. Additionally, despite the fact that Palmer may serve very little, and possibly no, prison time even if he is tried, the governmental interest, as the court explained in Sell, is not in seeing him convicted, but rather in ensuring that he is brought to trial. Id. at 180 ("Power to bring an accused to trial is fundamental to a scheme of 'ordered liberty' and prerequisite to social justice and peace" (quoting Illinois v. Allen, 397 U.S. 337, 347 (1970) (Brennan, J. concurring))). Because Palmer can only be brought to trial if he is competent, involuntary medication is necessary under the circumstances of this case.

## III. CONCLUSION

Because we find that the record in this case supports the need to involuntarily medicate Palmer in order to render him competent to stand trial, we AFFIRM the district court's judgment.