# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-30049

United States Court of Appeals
Fifth Circuit

**FILED**
September 16, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SUSAN KIRCHOFF JAMES, also known as Susan James, also known as Susan Kirchoff,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, HO, and ENGELHARDT, Circuit Judges.

JAMES C. HO, Circuit Judge:

Forced medication to ensure that a mentally troubled criminal defendant is competent to stand trial implicates profound liberty interests under the Due Process Clause. To protect those interests, the Supreme Court has established a four-prong test that prosecutors must satisfy before a court may compel the medication of the accused. *See Sell v. United States*, 539 U.S. 166 (2003).

To date, however, neither the Supreme Court nor this court have stated what burden of proof the government must carry under the four-prong test. But our sister circuits overwhelmingly agree that the government must estab-lish the four factors by clear and convincing evidence, and not just by a

No. 19-30049

preponderance of the evidence. The parties here agree as well. We now join our sister circuits and adopt the same burden of proof today.

Because it is not clear from the record what burden of proof the district court applied here, and because of the sensitivity of the interests involved, we vacate and remand so that the district court can apply the clear and convincing evidence standard accordingly.

I.

Susan James allegedly threatened to kill her aunt and uncle in violation of 18 U.S.C. § 875(c). After she was arrested and taken into custody, the district court held a hearing to determine whether James was competent to stand trial, in light of her stated belief that everyone involved in this prosecution, including her own lawyer, was conspiring against her. Prior to the February 7, 2018, hearing, James underwent a court-ordered psychiatric and psychological evaluation conducted by Dr. Tennille Warren-Phillips, a licensed psychologist, at the Bureau of Prisons (BOP) federal detention center in Houston, Texas. Dr. Warren-Phillips diagnosed James with General Personality Disorder and Obsessive-Compulsive Disorder, but nevertheless initially concluded that she was competent to stand trial.[1]

James's attorney, however, was concerned about her own fraught interactions with James. So she requested an independent evaluation.

The independent evaluation conducted by Dr. Loretta Sonnier, a forensic psychiatrist, concluded that James was *not* competent to stand trial. As reflected in her December 21, 2017 report, Dr. Sonnier diagnosed James with "schizoaffective disorder, bipolar type"—a condition marked by "fixed false

---

[1] The BOP later questioned its initial conclusion after learning that James had lied during its evaluation of her. It thereafter "support[ed] an effort to commit Ms. James to a federal medical center for treatment for restoration to competency." Accordingly, the district court did not consider this initial report at the *Sell* hearing.

2

No. 19-30049

beliefs" that "affect her judgment." Dr. Sonnier further concluded that psychotropic medication would be "substantially likely" to render James competent to stand trial.

After a hearing held on February 7, 2018, the district court found James was not competent to stand trial.

James was then sent to a medical facility in an effort to restore her competency. Dr. Hayley Blackwood, a forensic psychologist, informed the court of her conclusion that James suffered from Delusional Disorder, Persecutory Type, and would need to be medicated to stand trial. In a preliminary letter submitted to the court, Dr. Blackwood said: "[W]e believe there is an increased likelihood that with [psychotropic medication], [James] could be restored to competency to stand trial in the foreseeable future." She repeated this conclusion in her full report to the court.

The BOP held an administrative hearing and reaffirmed Dr. Blackwood's conclusions. Dr. Judith Cherry, who oversaw the hearing, concluded that "[a]ntipsychotic medication is [] recognized as a safe and standard treatment for Delusional Disorder. The evidence presented is clear, and persuasive that involuntary treatment with antipsychotic medication is medically appropriate and the only viable option to restore Ms. James to mental competence to stand trial."

James consistently refused consent to be medicated. So the government requested a hearing under *Sell* to determine whether it could medicate her involuntarily. *See* 539 U.S. at 179–81.

At the January 10, 2019 hearing, both Dr. Blackwood and Dr. Jose Silvas, a psychiatrist in charge of James's medication, testified that medication was necessary to restore James's competency. James's counsel cross-examined the government's witnesses, and James spoke on her own behalf, but otherwise did not provide her own evidence.

No. 19-30049

In an oral pronouncement, the district court concluded that the government met its burden under *Sell*, and ordered that James

> shall be involuntarily medicated, in an attempt to render her competent to stand trial, in accordance with the treatment plan recommended by Dr. Silvas . . . . Prior to each administration of involuntary medication, James shall be provided an opportunity to voluntarily receive antipsychotic medication, as directed by Dr. Silvas, as an alternative to involuntary medication. . . . James shall remain confined at the Carswell Federal Medical Center (FMC) for six (6) months, or a lesser period that is reasonably sufficient to restore her to competency.

The court memorialized its oral ruling in a non-substantive written order, which it stayed so James could seek an interlocutory appeal. *See Sell*, 539 U.S. at 176–77 (permitting interlocutory appeal of such orders under the collateral-order doctrine). To date, James has been in custody for over two years.

II.

The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Forcibly medicating a criminal defendant to ensure that he is competent to stand trial plainly intrudes upon liberty interests protected by the Due Process Clause. *See, e.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 725 (1997) (noting our "long legal tradition protecting the decision to refuse unwanted medical treatment"); *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 269 (1990) ("At common law, even the touching of one person by another without consent and without legal justification was a battery. . . . This notion of bodily integrity has been embodied in the requirement that informed consent is generally required for medical treatment.").[2]

---

[2] Mental competence is a prerequisite to stand trial. *See Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.");

No. 19-30049

In *Sell*, the Supreme Court set forth a four-prong test to govern the forcible medication of defendants to restore their competency for trial. District courts must ask "(1) whether important governmental interests are at stake; (2) whether involuntary medication will significantly further those interests; (3) whether involuntary medication is necessary to further those interests; and (4) whether the administration of the drugs is medically appropriate." *United States v. Palmer*, 507 F.3d 300, 303 (5th Cir. 2007) (citing *Sell*, 539 U.S. at 179).

*Sell* did not, however, establish the government's evidentiary burden. But on appeal, the parties agree that the government must provide clear and convincing evidence under the four-prong test before an accused may be forcibly medicated. Nine of our sister circuits take the same view today—as did the United States government in *Sell* itself.[3]

Given the "particularly important individual interest[]" at issue here, we see no reason to disagree. *See Addington v. Texas*, 441 U.S. 418, 424 (1979) (specifying when a "clear and convincing" standard is appropriate, and noting that civil commitment, deportation, and denaturalization proceedings are governed by such a standard); *see also Washington v. Harper*, 494 U.S. 210, 229

---

*Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (defendant is competent if he has a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . a rational as well as factual understanding of the proceedings") (quoting Solicitor General).

[3] *See United States v. Dillon*, 738 F.3d 284, 291–92 (D.C. Cir. 2013); *United States v. Diaz*, 630 F.3d 1314, 1331–32 (11th Cir. 2011); *United States v. Fazio*, 599 F.3d 835, 840 n.2 (8th Cir. 2010); *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 692 (9th Cir. 2010); *United States v. Bush*, 585 F.3d 806, 814 (4th Cir. 2009); *United States v. Grape*, 549 F.3d 591, 598, 604 (3d Cir. 2008); *United States v. Green*, 532 F.3d 538, 545 (6th Cir. 2008); *United States v. Bradley*, 417 F.3d 1107, 1114 (10th Cir. 2005); *United States v. Gomes*, 387 F.3d 157, 160 (2d Cir. 2004); *see also* Br. of United States 43 n.11, *Sell*, 539 U.S. 166 (No. 02-5664) ("The importance and nature of the interests at stake here are comparable to the interests bearing on the decision to civilly commit an individual, in which the Court adopted the clear and convincing standard of proof. That standard is therefore the appropriate one in this setting.") (citations omitted).

5

No. 19-30049

(1990) ("The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty.").

It is not clear whether the district court here applied a clear and convincing evidentiary standard—which is perhaps understandable, because until today, our court has not adopted a standard. From our review of the record, the district court only invoked the need for "clear and convincing evidence" when it analyzed the second *Sell* factor. The court was silent as to the burden of proof governing the other *Sell* factors—as the government recently acknowledged in a post-oral-argument filing on appeal.

Because we cannot determine what standard the district court applied, we vacate the *Sell* order and remand to allow the district court to apply the clear and convincing standard in the first instance. *See, e.g., United States v. Bush*, 585 F.3d 806, 817 (4th Cir. 2009) ("[T]he application of the clear-and-convincing standard in this case might be material to the question of whether the government met its burden. For that reason, we remand this issue . . . to the district court to receive further evidence, if it deems it appropriate, and to apply the clear-and-convincing burden of proof.").

\* \* \*

Forced medication would be a significant incursion into James's liberty. We cannot tell whether the district court here applied the proper burden of proof—and thus we cannot tell whether the evidence is sufficient to support such an incursion. Accordingly, we vacate the *Sell* order and remand for further proceedings.[4]

---

[4] Many district courts issue written opinions to facilitate our appellate review under *Sell*. *See Palmer*, 507 F.3d at 303 ("The magistrate judge issued a thorough and detailed report and recommendation where he . . . recommended involuntary medication to restore his competency."); *United States v. Rix*, 574 F. Supp. 2d 726 (S.D. Tex. 2008) (written order); *United States v. Reynolds*, 553 F. Supp. 2d 788 (S.D. Tex. 2008) (same); *United States v.*

*Algere*, 396 F. Supp. 2d 734 (E.D. La. 2005) (same).  On remand, the district court may wish to do the same.