# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 11, 2023

Lyle W. Cayce
Clerk

————————

No. 23-30030

————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Bryant Lamont Harris,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CR-71-1

_____

Before Elrod, Ho, and Oldham, *Circuit Judges*.

Per Curiam:

Bryant Lamont Harris asserts that he is required by his religious faith to abstain from psychiatric medication. Because he is not competent to stand trial, though, the government requested to involuntarily medicate him, and the district court granted the motion. The district court did not err in concluding that the government had satisfied the conditions for involuntary medication set out in *Sell v. United States*, 539 U.S. 166, 180–81 (2003). However, the district court should also have analyzed whether any statutory religious-freedom protections apply to Harris. We therefore VACATE and REMAND for the district court to consider that issue in the first instance.

No. 23-30030

## I

Harris was charged for threatening to assault a federal judge in violation of 18 U.S.C. § 115(a)(1)(B). In February 2020, the FBI received information from the United States Marshals regarding threats made via telephone toward Judge Susie Morgan and her staff. In response, FBI agents were dispatched to Judge Morgan's Chambers to conduct interviews with Judge Morgan and her staff. Based on the interview, the agents determined that on that morning, a male who identified himself as Bryant Lamont Harris had contacted the Chambers via telephone and complained about the New Orleans Police Department.

Harris asserted that he was an Army veteran and had been expertly trained in marksmanship. He then asked Judge Morgan's staff how many security personnel were assigned to Judge Morgan. When asked why he needed that information, he replied, "I need to know how many people I need to take out to get to the Judge." He then said, "I'm not hiding" and "I don't give a f---," and then hung up the phone. Investigation by the FBI revealed that Harris had contacted Judge Morgan's Chambers several times before.

Harris was subsequently arrested, detained, and charged by an indictment with threatening to assault a federal judge in violation of 18 U.S.C. § 115(a)(1)(B). Shortly after his arrest, Harris underwent a behavioral health evaluation. Among other things, the evaluation noted Harris's delusional belief that he was offered "multiple women and $500k a month contract to join the Illuminati" due to his "special gifts."

Given his apparent delusions, the district court held a hearing to determine whether Harris was competent to stand trial. The court determined that Harris was incompetent and ordered that he be committed to the custody of the Attorney General. Specifically, the order stated that the Attorney General "shall hospitalize Harris for treatment in a suitable facility

for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." The court also ordered the Attorney General to provide "reports on [Harris's] mental competency" throughout the confinement period. Harris appealed the district court's incompetency determination, and the Fifth Circuit affirmed. *United States v. Harris*, No. 21-30326, 2022 WL 1044915 (5th Cir. Apr. 7, 2022).

Toward the end of the confinement period, the district court received a report from Forensic Psychologist Brianna Glover. The report noted that Harris remained incompetent to stand trial. Furthermore, because Harris had been refusing medication, the report also recommended that Harris be involuntary treated with psychotropic medication. In light of that recommendation, the district court held a status conference and ordered the parties to submit briefing on the first *Sell* factor (*i.e.*, whether the government has an important interest to warrant involuntary medication). *Sell*, 539 U.S. at 180. The district court also issued an order directing the Bureau of Prisons to prepare an addendum outlining in detail the proposed treatment plan and other details pertinent to the *Sell* factors.

The court then conducted another hearing once it received the addendum. During that hearing, Harris (for the first time) raised a religious objection under the First Amendment to being involuntarily medicated. Accordingly, the district court granted the parties additional time to submit briefing on the First Amendment issue. Having considered the briefs, the district court determined that: (1) the government has a compelling interest in prosecuting Harris's crime, which was not outweighed by Harris's First Amendment right to freely exercise his religion; and (2) the government has satisfied the other *Sell* prongs. Thus, the court ordered that Harris "shall be

involuntarily medicated, in an attempt to render him competent to stand trial."

## II

"In reviewing a district court's order to medicate a defendant involuntarily, we review findings of fact for clear error and conclusions of law *de novo*." *United States v. Gutierrez*, 704 F.3d 442, 448 (5th Cir. 2013). "A factual finding is not clearly erroneous as long as it is plausible in light of the record read as a whole." *United States v. Dinh*, 920 F.3d 307, 310 (5th Cir. 2019) (citation and quotation marks omitted).

## III

Under *Sell*, to administer anti-psychotic drugs involuntarily for the purpose of restoring a defendant's competency to stand trial, the government must establish that: (A) "*important* governmental interests are at stake," taking into account that "[s]pecial circumstances may lessen the importance of that interest"; (B) "involuntary medication will *significantly further* those . . . interests"; (C) "involuntary medication is *necessary* to further those interests"; and (D) "administration of the drugs is *medically appropriate*." *Sell*, 539 U.S. at 180–81 (2003). Each factor must be proved by clear and convincing evidence. *United States v. James*, 938 F.3d 719, 723 (5th Cir. 2019). We approve of the district court's careful analysis of the *Sell* factors. However, this is not the end of the inquiry.

In the district court, Harris raised his religious belief as a special circumstance that could lessen the government's interest in involuntarily medicating him. He did not explicitly name any statutes that might independently protect his religious freedom, such as the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb to 2000bb-4, *invalidated in part by City of Boerne v. Flores*, 521 U.S. 507 (1997). *See also* Religious Land

Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc to 2000cc-5.

But Harris was not required to name RFRA to invoke any protection it might offer him. He needed only to allege facts that, if true, would plausibly state a claim under the Act. *Cf. Johnson v. City of Shelby*, 574 U.S. 10 (2014) (plaintiff needed not cite 42 U.S.C. § 1983 in complaint when pleaded facts plausibly stated a claim under that statute); *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 207 n.2 (5th Cir. 2016) ("A complaint need not cite a specific statutory provision or articulate a perfect 'statement of the legal theory supporting the claim asserted.'" (citation omitted)). This is particularly important because *Sell* requires the government to prove an important government interest, while RFRA requires the government to prove a *compelling* government interest when it applies to a protected religious belief or practice. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014).

While we endorse the district court's *Sell* analysis, we VACATE and REMAND for the district court to consider in the first instance whether RFRA or any other statutory religious-freedom protection applies. In the discussion below, we review the *Sell* factors but leave the RFRA issue for the district court to address on remand.

A

The first *Sell* prong requires the government to show that important governmental interests are at stake, while taking into account "[s]pecial circumstances" that may lessen the importance of that interest. *Sell*, 539 U.S. at 180. We consider: (1) whether the government has an important interest in prosecuting Harris's crime; and whether that interest is sufficiently undermined by the special circumstances presented by Harris.

1

The Supreme Court has held that "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important." *Id.* Here, Harris contests the application of that holding, asserting that his offense is not "serious." *Id.* He argues that while courts have held that crimes carrying maximum penalties of as low as six months can be considered serious, there is no hard fast rule on the maximum sentence required for a crime to be considered serious. *See United States v. Evans*, 404 F.3d 227, 238 (4th Cir. 2005). Thus, rather than relying on his offense's six-year maximum sentence, Harris argues that the district court should have looked at his sentencing guideline range in addressing the question of seriousness. Because the sentencing guideline indicates that, if convicted, he would likely be sentenced to less than 46 months, Harris asserts that the district court erred in holding that his offense was serious.

But our holding in *United States v. Palmer* squarely rejects his argument. 507 F.3d 300, 304 (5th Cir. 2007). While it is true that the Fourth Circuit in *United States v. Evans* refused to "set forth any rigid rule as to what the statutory maximum must be for a crime to be a serious one," 404 F.3d at 238, this court has held that "crimes authorizing punishments of over six *months* are 'serious'" in the context of involuntary medication proceedings, *Palmer*, 507 F.3d at 304 (emphasis added). We have also held that it is appropriate for a district court "to consider the maximum penalty, rather than the sentencing guidelines range." *Id.*

Harris's offense carries a maximum sentence of six years, far greater than the serious six-month sentence contemplated by *Palmer*. 18 U.S.C. § 115 (b)(4). Thus, we agree with the district court that Harris's offense is serious. Consequently, the government has an important interest in bringing Harris to trial. *Sell*, 539 U.S. at 180.

No. 23-30030

Having determined that the government has an important interest, we now address whether there are special circumstances that sufficiently "lessen the importance of that interest." *Id.*

2

Harris argues that several special circumstances are present here: (a) his likelihood of civil commitment; (b) his time-served as a pre-trial detainee; and (c) his religious belief.  We address each in turn.

a

As to the first special circumstance, Harris argues that because he will likely be civilly committed if he does not stand trial, the government's prosecutorial interests "that ordinarily attach to freeing [a criminal] without punishment" is diminished.  *Id.*  He notes that the Federal Medical Center forensic staff has recommended that he should remain committed to the Mental Health Department at FMC-Butner.   Even though his civil commitment proceeding has been stayed pending the resolution of this case, Harris contends that there is no question that the government has taken the position that he should be civilly committed.  In the alternative, Harris argues that at the very least, the district court should have allowed the civil commitment proceeding to proceed prior to making a final ruling on the *Sell* hearing.  Harris's argument fails for two independent reasons.

First, this court has held that "it is not enough that [a defendant] could *potentially* be civilly committed; for the government's prosecutorial interest to be lessened meaningfully, [his] civil commitment would need to be *certain*."  *United States v. James*, 959 F.3d 660, 664 (5th Cir. 2020).  Here, the record does not indicate (nor does Harris argue) that his civil commitment is certain.  Thus, under *James*, the district court correctly held that the government's interest in prosecution was not meaningfully lessened because Harris has not shown that civil commitment is certain.

7

Second, Harris is judicially estopped from relying on the likelihood of his civil commitment. "Judicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.'" *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (citation omitted). Before applying the doctrine of judicial estoppel, three conditions must be satisfied: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the [inconsistency] must not have been inadvertent." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004). All three conditions are satisfied here.

As background, in light of Harris's alternative request to "allow[] the civil commitment proceeding to proceed . . . prior to making a final ruling," this panel stayed this case to allow for the resolution of his civil commitment proceeding in North Carolina. Less than a day later, the United States District Court for the Eastern District of North Carolina ordered the parties to submit briefs outlining their position as to whether the stay on the civil commitment proceeding should be lifted. In contradiction with his plea to this panel, however, Harris, who was represented by different counsel in that proceeding, asked the North Carolina court to "decline" lifting its stay.

By doing so, Harris adopted "clearly inconsistent" positions, and so the first condition for judicial estoppel is satisfied. *Id.* The second condition is likewise satisfied because in staying this case, this panel relied on Harris's previous assertion. As to the third requirement, there is no indication that the inconsistency was inadvertent. Accordingly, because all three conditions for judicial estoppel are satisfied here, we hold that Harris is judicial estopped from asserting that the likelihood of civil commitment undermines the government's interest. Thus, this special circumstance does not weigh in favor of Harris.

8

b

Next, Harris argues that his time served as a pre-trial detainee undermines the government's prosecutorial interest. He notes that as of March 2023, he has been detained for more than three years (37 months) while awaiting trial. He further asserts that, if he was mandated to undergo involuntary medication, it would take another 12 months before he could stand trial. Based on the record, however, the psychiatrist indicated that it would take 4 to 8 months. Nonetheless, in total, he will be incarcerated for 41 to 49 months before he can stand trial, which is close to his guideline range of 37 to 46 months. Accordingly, Harris contends that involuntary medication and the subsequent trial would likely not lead to any additional confinement time.

However, this court has held that "even assuming [the defendant] would serve little or no prison time if tried and convicted, the government's interest in prosecution is not extinguished" because the government has an interest not only "in punishing [a defendant] *per se* but in trying her and vindicating the law publicly." *James*, 959 F.3d at 664. Consequently, under *James*, the government still has an interest in prosecuting Harris, even if the trial may not lead to any additional confinement time.

c

Finally, Harris asserts that his religious belief as a Jehovah's Witness prevents him from taking medication, and that any such administration of medication would violate his First Amendment rights. Thus, he contends that his religion creates a special circumstance under *Sell* that lessens the government's interest in prosecuting in this matter.

Harris's religious belief presents an important special circumstance that is relevant to the first *Sell* factor. *Cf. United States Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) ("COVID-19 vaccination requirements

substantially burden each Plaintiff's free exercise of religion."). But it also might be statutorily protected under RFRA. Because *Sell* and RFRA place different burdens on governmental action (proving an important interest as compared to proving a compelling interest), it is not proper to analyze religious belief just as a special factor under *Sell*. However, the lack of a district court record on the subject counsels against our addressing the issue in this opinion. We therefore leave the statutory religious-freedom analysis for the district court to address in the first instance on remand.

*       *       *

Having considered the three special circumstances presented, we hold that the government's prosecutorial interest here is important under *Sell*, and that interest has not been sufficiently lessened. Thus, we agree with the district court that the government has satisfied the first *Sell* prong.

B

We now turn to the second *Sell* prong. To establish that involuntary medication will significantly further the government's interest, it has to show that the administration of the medication is: (1) substantially likely to render the defendant competent to stand trial; and (2) substantially unlikely to have side effects that will interfere with the defendant's ability to assist counsel in conducting a trial defense. *James*, 959 F.3d at 664–65.

Harris contends that the government failed to do so because it relied on mere conclusory findings and failed to provide any detailed treatment plan that relates specifically to him. For example, Harris argues that the government's psychiatric report lacked details regarding the impact of the medications on his ability to communicate with counsel, and it failed to discuss how his medication would impact his sciatica in his right leg.

Although the government could have submitted more robust evidence, we agree with the district court that the government has provided enough evidence to satisfy the second *Sell* prong. *See James*, 959 F.3d at 665 ("To be sure, the government could have submitted more robust evidence . . . but the numerous medical opinions *do* constitute evidence. And, whatever the strength of that evidence, the record provides no reason to question its accuracy.").

The government provided an individualized treatment plan by its psychiatrist, Dr. Cloutier, which stated that involuntary medication is substantially likely to render Harris competent to stand trial (70–80% chance). The psychiatrist also concluded that medication would make Harris "much more likely . . . to work with his counsel" and was "substantially unlikely to interfere with his ability to assist his counsel." Even though the recommended medications (haloperidol and risperidone) have known side effects, the report noted that "those side effects are relatively less common and less severe with medications such as risperidone."

We hold that the government psychiatrist's medical opinion is sufficient evidence that that involuntary medication will "significantly further" the government's interest. And "whatever the strength of that evidence," Harris "provides no reason to question its accuracy." *Id.* Thus, we agree with the district court that the government has provided enough evidence to satisfy the second prong.

C

Next, the third *Sell* prong requires the government to show that involuntary medication is necessary to further the government's interest. Harris contends that the government fails on this prong because it failed to provide any statements regarding alternative treatments being offered to him or statements regarding whether any such alternative or less intrusive

treatments would be beneficial to him. As support, Harris cites his own testimony during one of the hearings that he has not been offered alternative treatments and that he believed that alternative treatments, such as counseling sessions, would be beneficial based on his past experiences.

But Harris's contention is inapposite. In addressing the third *Sell* prong, "[t]he question is not whether [the government] has attempted less intrusive treatment; instead, it is whether such treatment would be 'unlikely to achieve substantially the same results' as medication." *James*, 959 F.3d at 667 (quoting *Sell*, 539 U.S. at 181). Here, the psychiatrist's report explicitly stated that "less intrusive treatments are very unlikely to achieve the same results." Despite Harris's longstanding knowledge of this report, he never requested that Dr. Cloutier testify at the hearing or submit to cross-examination. Nor did he present any evidence to contradict the medical professionals' findings, other than with his own testimony.

Given this court's holding in *James* and the psychiatrist's testimony, the district court did not err in its determination that the government has shown by clear and convincing evidence that involuntary medication is necessary to further the government's interest.

D

Finally, the fourth *Sell* prong requires that the involuntary treatment is medically appropriate. Harris contends that the government's report is inadequate because "[i]n analyzing this factor, courts must consider the long-term medical interests of the individual rather than the short-term institution interests of the justice system." *James*, 959 F.3d at 668 (citation and quotation marks omitted). And so, Harris argues that the government fails to satisfy the fourth *Sell* prong because it presented no evidence related to his long-term medical interest.

No. 23-30030

But Harris's argument fails because the psychiatrist's report detailed Harris's DSM-5 Diagnosis and provided an individualized treatment plan. And the report explicitly stated that "[i]t is clinically appropriate . . . to treat [Harris's] psychotic illness with antipsychotic medication." Given the lack of contrary medical evidence in the record, the district court did not clearly err in relying on Dr. Cloutier's report.

\*    \*    \*

The district court did not err in its determination that the government has satisfied the four conditions for involuntary medication set out in *Sell*. 539 U.S. at 180–81. However, because RFRA or other statutory protections might apply, we VACATE and REMAND for the district court to undertake that analysis.