*United States v. Boima*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2023

(Argued: March 1, 2024        Decided: August 22, 2024)

No. 23-6115

_____

UNITED STATES OF AMERICA

Appellee

-v.-

SAMUEL BOIMA

Defendant-Appellant.

_____

Before:     LIVINGSTON, Chief Judge, SULLIVAN, and MENASHI, Circuit Judges.

Defendant-Appellant Samuel Boima ("Boima") appeals from an order authorizing the Bureau of Prisons forcibly to medicate him to restore his competency to stand trial on the charge that he assaulted federal officers engaged in the performance of official duties, in violation of 18 U.S.C. § 111(a)(1). After finding Boima incompetent to stand trial, the United States District Court for the Western District of New York, David G. Larimer, *J.*, ordered the involuntary administration of psychotropic medication to Boima to restore his competency. Because the district court failed to consider and make a finding as to all four factors

1

in *Sell v. United States*, 539 U.S. 166 (2003), the district court's order is vacated and the matter is remanded for further proceedings consistent with this opinion.

FOR DEFENDANT-APPELLANT:
MARTIN J. VOGELBAUM, Assistant Federal Public Defender, Buffalo, New York.

FOR APPELLEE:
SEAN ELDRIDGE, Assistant United States Attorney (Tiffany H. Lee, Assistant United States Attorney, *on the brief*), for Trini E. Ross, United States Attorney, Western District of New York, Buffalo, New York.

PER CURIAM:

Defendant-Appellant Samuel Boima appeals from a January 19, 2023 order of the United States District Court for the Western District of New York (Larimer, *J.*) granting the government's motion forcibly to administer antipsychotic medication to render Boima competent to stand trial. On appeal, Boima argues that the district court failed to make the first of the four findings required to issue such an order under *Sell v. United States*, 539 U.S. 166 (2003): that the government has an important interest in his prosecution. Boima further contends that the government lacks such an interest, foreclosing his involuntary medication. For the reasons set forth herein, we agree with Boima that the order authorizing his forced medication does not reflect a determination by the district court that important governmental interests are at stake in his prosecution. Accordingly, we VACATE

2

the order and REMAND so that the district court may in the first instance conduct the requisite analysis consistent with this opinion.

## I. BACKGROUND

### A. The Complaint and Initial Appearance

On July 20, 2020, the government filed a criminal complaint accusing Boima, a native and citizen of Sierra Leone, of assaulting two officers at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, where he was detained pending deportation pursuant to a final order of removal. The complaint alleges that on May 25, 2020, the officers responded to an altercation between Boima and another detainee. Boima became "actively resistant and verbally combative" when the officers handcuffed and escorted him to the Special Housing Unit ("SHU"), where he was to be held pending an investigation. App'x 16. When the officers placed Boima in a cell in the SHU, ordered him to remain on the bunk until they exited, and then turned to leave, Boima spat a mixture of saliva and blood on one officer's uniform jacket and duty belt, and on the other's uniform shirt, pants, duty belt, and bare neck. The officers secured Boima's cell door "without further incident." App'x 16.

The complaint charges an assault on federal officers engaged in the performance of official duties, in violation of 18 U.S.C. § 111(a)(1). The charge is a

3

Class D felony that carries a statutory maximum sentence of eight years' imprisonment. 18 U.S.C. § 111(a)(2).

Boima was first scheduled to appear on the complaint on July 27, 2020, but the date of his first appearance was repeatedly scheduled and rescheduled by the court (Payson, *M.J.*) because Boima refused to cooperate with efforts to bring him from BFDF to the federal courthouse in Rochester, New York. At the fourth scheduled initial appearance, on August 10, 2020, Boima appeared by video. Boima immediately began to rant—alleging false imprisonment, adamantly denying that criminal charges were pending against him or that he was represented by his counsel of record, and concluding that "I need you -- the family members involved that want money or whatever amount of money that they spent on this situation [--] I need ya'll to leave me alone and stop touching me." App'x 46. Magistrate Judge Payson noted that she had "never encountered any defendant who has been so resistant and noncooperative with an initial appearance." App'x 59. On August 14, after providing notice to the parties and an opportunity to submit information to the court, she ordered a psychological examination pursuant to 18 U.S.C. § 4241(a) to determine Boima's competency to stand trial. Boima was removed from immigration custody and admitted to the

4

Metropolitan Correctional Center ("MCC"), a federal detention facility in New York City.

## B.     Competency Examination and Hearing

After receiving an evaluation report from Dr. Kari Schlessinger, who was a forensic psychologist at the MCC before becoming chief psychologist at the Metropolitan Detention Facility in Brooklyn, New York in 2021, Magistrate Judge Payson conducted a competency hearing on June 2, 2021.  In her report, Dr. Schlessinger noted that Boima, throughout his detention at the MCC, was "generally uncooperative" and "often illogical and highly agitated."  App'x 116. She testified at the hearing that Boima presented as "psychotic with paranoid features" and that he "didn't believe that he had a court case, rather he believed he had been kidnapped."  App'x 100.  Although unable to diagnose him with a specific psychotic disorder as a result, *inter alia*, of his "guarded and evasive demeanor," Dr. Schlessinger assessed in her report that Boima appeared to be "actively psychotic" with "unspecified schizophrenia spectrum and other

psychotic disorder." App'x 115–16. Dr. Schlessinger concluded in both her report and her testimony that Boima was not competent to stand trial.[1]

Based on Dr. Schlessinger's testimony, Magistrate Judge Payson issued a Report and Recommendation concluding that the district court should find Boima incompetent to stand trial. The magistrate judge recommended committing Boima to Federal Bureau of Prisons ("BOP") custody for a period not to exceed four months to determine "whether there is a substantial probability that in the foreseeable future" he would return to competency. App'x 118–19 (citing 18 U.S.C. § 4241(d)(1)). Neither party objected, and the district court (Larimer, *J.*) issued a Decision and Order in July 2021 that adopted the Report and Recommendation and found Boima incompetent to stand trial. The district court ordered Boima hospitalized for an assessment of whether he might attain the capacity to stand trial. As a result, Boima was admitted to the Federal Medical Center in Butner, North Carolina ("FMC Butner") on December 21, 2021.

---

[1] She further indicated that "spontaneous remission" was "very unlikely" without psychotropic medication, but that Boima was unlikely to take such medication voluntarily. App'x 108–09. In her report, she also indicated that she could not rule out whether Boima was suffering from Post Traumatic Stress Disorder ("PTSD").

## C.     The *Sell* Proceedings

Dr. Kristina P. Lloyd, a forensic psychologist at FMC Butner, submitted a forensic evaluation to the district court in March 2022.  Her report diagnosed Boima with schizophrenia.[2]  Dr. Lloyd opined that Boima remains incompetent to stand trial, but that "a substantial probability exists" that psychotropic medication—to which Boima will not agree—would restore his competence.  SD 23.  Dr. Lloyd noted, accurately, that pursuant to *Sell v. United States*, 539 U.S. 166 (2003), a district court is required to determine, *inter alia*, whether important governmental interests are at stake in bringing a criminal defendant to trial before ordering his involuntary medication to restore competency.  In the event that the court determined that additional efforts should be made to restore Boima's competency to stand trial, Dr. Lloyd noted that "we would request the court order treatment with psychotropic medication on an involuntary basis."  SD 23.

The district court, in a letter dated May 17, 2022, urged the Assistant United States Attorney in charge of Boima's prosecution to "consider withdrawing the complaint against Mr. Boima."  App'x 370.  In the letter, which was also provided

---

[2] She also noted that while "it is possible Mr. Boima meets the criteria for [PTSD], his inability and unwillingness to participate in interviews or testing makes it difficult to determine [i]f this diagnosis is correct."  SD 22.

7

to Boima's counsel, the district court stated that the assault on the officers was "unsettling, but no serious injuries occurred and such acts from an inmate who now has demonstrated mental health issues may not be all that uncommon in a prison setting."  App'x 370.  The letter noted that the charges against Boima had been lodged almost two years earlier and that, at this point, the government's interest in continuing the prosecution was "quite low."[3]  App'x 370–71.

The government, however, did not withdraw the complaint, but moved for a *Sell* hearing.  The hearing began on June 29, 2022,[4] and continued on September 27, 2022.  At the outset, defense counsel asked the court to rule on the "threshold legal question" of whether the government had a sufficiently strong interest in prosecuting Boima.  App'x 166.  The court declined at that stage, explaining: "I think it's sort of a balance and you might find the Government's interest is

---

[3] The district court specifically observed that in the event of an application pursuant to *Sell*, "[a] hearing will take time, perhaps many months, and Boima remains detained for an excessive period of time.  I suspect that if such an application is made, he will be in custody many months, perhaps years longer than [what] the guideline sentence might be for one who is convicted of spitting at a prison guard."  App'x 371.

[4] The hearing transcript records the date as June 29, 2020.  *See* App'x 159; *see also* Appellant's Br. at 17.  However, the 2020 year appears to be error.  *See* Appellee's Br. at 8 (referring to June 29, 2022, as the first date of the *Sell* hearing); Hearing Transcript at App'x 166 (transcribing defense counsel expressing that Boima had already been detained for approximately two years on the instant offense).

8

relatively low but there are other aspects of the so-called *Sell* factors that indicate maybe what the Government seeks here is not inappropriate." App'x 167.

The government called Dr. Lloyd, who testified regarding the forensic evaluation she had submitted to the court in March. Dr. Lloyd diagnosed Boima with schizophrenia and assessed that he could be restored to competency with psychiatric medication. She calculated that this might take about five and a half months, App'x 209, but that given his refusal to undertake treatment voluntarily, absent *Sell* there is "no other way to restore him to competency," App'x 213. The government also called Dr. Charles Cloutier, a staff psychiatrist at FMC Butner, and introduced his report dated July 19, 2022. Dr. Cloutier testified that he also diagnosed Boima with schizophrenia and that Boima requires medication to be restored to competency. Dr. Cloutier estimated the treatment timeframe as four to eight months.

Near the conclusion of the hearing, in response to a question from the court, the government indicated that in the event it dismisses the charge against Boima in light of his inability to stand trial, "there is a mechanism for civil commitment." App'x 349. The government nonetheless conceded that "I don't know what would

happen with that.  I don't know if he would be civilly committed. . . . I don't even know if there would be a proceeding that would [be] undertaken."  App'x 349.

## D.    *Sell* **Order**

On January 19, 2023, the district court issued a decision and order granting the government's motion to administer antipsychotic medication to Boima to restore him to competency—and to do so forcibly if he refused to take the medication voluntarily.  The court noted that based on the medical opinions of Drs. Lloyd and Cloutier, "there is a substantial probability that with appropriate antipsychotic medication, whether voluntarily taken or involuntarily administered, Boima would be restored to competency to face the pending charge, [and] the medication would treat Boima's significant mental illness."  App'x 385. The court noted that "[b]oth Dr. Lloyd and Dr. Cloutier testified that there were some side effects connected with such antipsychotic medication, but that those side effects could be monitored and treated."  App'x 384–85.  And "there is virtually no chance," the court concluded, "that Boima would be restored to competency" without medication.  App'x 385.  The court did not address the government's interest in prosecuting Boima, other than to note that the court had

"considered the directives and recommendations" of *Sell* and *Washington v. Harper*, 494 U.S. 210 (1990).[5]  App'x 384.

On February 2, 2023, the district court denied Boima's motion to stay the court's order.  Boima filed a timely notice of appeal.  On April 5, 2023, this Court issued a stay of the *Sell* order.

## II.  DISCUSSION

The Supreme Court in *Sell* "held that the Government may involuntarily medicate a mentally ill defendant to render him competent for trial if: [i] there are important governmental interests in trying the individual; [ii] the treatment will significantly further those interests; [iii] the treatment is necessary to further those interests, considering any less intrusive alternatives; and [iv] the treatment is medically appropriate."  *United States v. Gomes*, 387 F.3d 157, 159–60 (2d Cir. 2004) [hereinafter "*Gomes II*"] (discussing *Sell*);  *see United States v. Magassouba*, 544 F.3d 387, 396 (2d Cir. 2008) (noting that the Supreme Court held in *Sell* that an

---

[5] *Harper* addresses the involuntary treatment of inmates with a serious mental illness who are dangerous to themselves or others, where treatment is in the inmate's medical interest.  *See* 494 U.S. at 236.  The Supreme Court in *Sell* observed that "[a] court need not consider" whether involuntary medication is permissible to render a defendant competent for trial "if forced medication is warranted for a *different* purpose, such as the purposes set out in *Harper* related to the individual's dangerousness."  519 U.S. at 181–82 (emphasis in original).  Significantly, the government has not argued, nor does the record support, that the *Harper* criteria are satisfied in this case.

11

incompetent defendant "may be involuntarily medicated for the sole purpose of rendering him competent to stand trial only if [the] four criteria are satisfied"). The first of the four *Sell* factors, "[w]hether the Government's asserted interest is important[,] is a legal question that is subject to *de novo* review."[6] *Gomes II*, 387 F.3d at 160. "The district court's findings with respect to the other *Sell* factors are factual in nature and are therefore subject to review for clear error." *Id.* (citing *Benjamin v. Fraser*, 343 F.3d 35, 43 (2d Cir. 2003)). *Sell* directs that a court "must find" each of the four factors satisfied to order a defendant involuntarily medicated to restore his competency to stand trial. 539 U.S at 180–81. And this Court has held that the government bears the burden of proof to establish each factor by "clear and convincing evidence." *Gomes II*, 387 F.3d at 160.

Here, the district court's order omits any discussion of *Sell*'s first factor, which requires that "a court must find that *important* governmental interests are at stake" before ordering involuntary treatment for the sole purpose of rendering a mentally ill defendant competent for trial. *Sell*, 539 U.S. at 180 (emphasis in original). To be sure, the court's order does provide analysis that would support

---

[6] We agree with the Fourth Circuit that factual findings relevant to this legal determination are reviewed for clear error. *United States v. Evans*, 404 F.3d 227, 236 (4th Cir. 2005).

12

affirmative findings as to the latter three *Sell* factors.  But it says nothing at all about the governmental interest supporting involuntary medication – an interest that the district court itself had suggested in its May 17, 2022 letter was "quite low."  App'x 371.  Because we vacate the district court's order for lack of the requisite finding as to *Sell*'s first factor, we need not reach Boima's argument that the government's interest in prosecuting him is insufficient to justify involuntary medication.  But because the issue is likely to arise on remand, we offer some guidance to the district court regarding the proper framework that it, in the first instance, is to apply.

\* \* \*

After affirming that a court must find important governmental interests at stake to authorize forced medication for the purpose of restoring a criminal defendant to competency, the *Sell* Court noted that "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important," whether the offense "is a serious crime against the person or a serious crime against property."  539 U.S. at 180.  It cautioned, however, that "[c]ourts . . . must consider the facts of the individual case in evaluating the Government's interest in

13

prosecution," noting that "[s]pecial circumstances may lessen the importance of that interest":

> The defendant's failure to take drugs voluntarily, for example, may mean lengthy confinement in an institution for the mentally ill – and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime. We do not mean to suggest that civil commitment is a substitute for a criminal trial. The Government has a substantial interest in timely prosecution. And it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost. The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution. The same is true of the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed, see 18 U.S.C. § 3585(b)).

*Id.*

As the Tenth Circuit said in *United States v. Valenzuela-Puentes*, "[w]hether a crime is 'serious' relates to the possible penalty the defendant faces if convicted, as well as the nature or effect of the underlying conduct for which he was charged." 479 F.3d 1220, 1226 (10th Cir. 2007). Here, Boima faces trial on the charge of assaulting federal officers engaged in the performance of their official duties—a crime for which a defendant may be sentenced to up to eight years in prison. The seriousness of this crime is suggested *both* by the penalty to which Boima would be exposed upon conviction, *see Gomes II*, 387 F.3d at 160 (noting

14

that "the seriousness of the crime . . . [is] evident from the substantial sentence Gomes faces if convicted" (quoting *United States v. Gomes*, 289 F.3d 71, 86 (2d Cir. 2002) [hereinafter "*Gomes I*"], *cert. granted*, *judgment vacated on other grounds*, 539 U.S. 939 (2003))); *see also United States v. Palmer*, 507 F.3d 300, 304 (5th Cir. 2007) (noting that "courts [have] held that crimes authorizing punishments of over six months are 'serious'"); *Evans*, 404 F.3d at 237–38 (concluding that the government had an important interest in trying a defendant charged with a felony carrying a maximum term of ten years), *and* by the nature or effect of the allegations leveled against Boima, which surely implicate an important governmental interest in "protect[ing] through application of the criminal law the basic human need for security," *Sell*, 539 U.S. at 180 (citation omitted).

Boima argues that his probable sentencing range under the U.S. Sentencing Guidelines ("Guidelines") is substantially less than eight years—assuming a "worst-case" scenario of perhaps 51 to 63 months' imprisonment. Appellant's Br. at 48. We agree with Boima that district courts should properly consider a potential Guidelines range in assessing the seriousness of an offense for these purposes, provided that such a range can be assessed to some reasonable degree of reliability at the early point at which many *Sell* assessments are likely to occur.

15

*See Gomes I*, 289 F.3d at 86 ("It is appropriate for the district court to consider the sentence likely to be imposed in fact rather than the statutory maximum alone.");[7] *see also United States v. Hernandez-Vasquez*, 513 F.3d 908, 919 (9th Cir. 2008) ("While the statutory maximum may be more readily ascertainable, any difficulty in estimating the likely [G]uideline[s] range exactly is an insufficient reason to ignore *Sell*'s direction that courts should consider the specific circumstances of individual defendants in determining the seriousness of a crime."). That said, we deem a Guidelines range of 51 to 63 months to itself suggest the seriousness of the offense. *See United States v. Gillenwater*, 749 F.3d 1094, 1101 (9th Cir. 2014) (considering a crime to be serious based on a Guidelines range of 33 to 41 months and the underlying conduct of making "lurid and distressing threats" against government employees and officials); *Valenzuela-Puentes*, 479 F.3d at 1226 ("We consider a maximum sentence of twenty years and a likely [G]uideline[s] sentence of six to eight years sufficient to render the underlying crime 'serious.'").

In addition to the statutory maximum, mandatory minimum, and likely Guidelines range faced by the defendant, a judge may also consider, to the extent

---

[7] Even though *Gomes I* was vacated and remanded for further consideration in light of *Sell*, we held in *Gomes II* that "nothing" in *Sell* undermines the persuasive reasoning of *Gomes I* that courts may consider the "sentence [a defendant] faces if convicted." *Gomes II*, 387 F.3d at 160 (quoting *Gomes I*, 289 F.3d at 86).

reasonably ascertainable, the individual facts of the case as they relate to the factors set forth in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 49–50 (2007). In particular, the district court should consider "the nature or effect of the underlying conduct," *Valenzuela-Puentes*, 479 F.3d at 1226; *see Gillenwater*, 749 F.3d at 1101, including here the fact that Boima is alleged to have spat "a mixture of saliva and blood" on the uniforms of both officers and on the bare neck of one, App'x 16. Although the district court below observed that "no serious injuries occurred," App'x at 370,[8] it could be argued that Boima's conduct posed not only a risk of disease transmission but also a threat to the authority of corrections officers in the detention facility. To the extent that such facts would be considered by a sentencing judge when weighing the § 3553(a) factors, they should also be considered when assessing whether the alleged crime is serious enough to establish an important government interest in prosecution. *See Gillenwater*, 749 F.3d at 1101.

Of course, the district court on remand must consider not only the seriousness of the crime charged in making a determination on the first *Sell* factor,

---

[8] Had injuries occurred, Boima would likely be facing a statutory maximum of twenty years instead of eight years. *See* 18 U.S.C. § 111(b) ("Whoever, in the commission of any acts described in [18 U.S.C. § 111(a)], . . . inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.").

17

but also countervailing considerations that may diminish the governmental interest in moving forward with this prosecution. *See Hernandez-Vasquez*, 513 F.3d at 918 (noting that "common to each of the appellate decisions interpreting *Sell* is a recognition that courts must consider the facts of individual cases in evaluating the government's interest in prosecution"). Even for a serious crime, "[s]pecial circumstances may lessen the importance" of the governmental interest in bringing a defendant to trial. *Sell*, 539 U.S. at 180. *Sell* provides several examples of such circumstances, including the likelihood of civil confinement, which may diminish the risks associated with releasing someone charged with an offense, and a long delay in bringing someone to trial, which creates "the possibility that the defendant has already been confined for a significant amount of time []for which he would receive credit toward any sentence ultimately imposed . . . ." *Id.* (citing 18 U.S.C. § 3585(b)).

In evaluating the governmental interest at stake in Boima's prosecution on remand, the district court should assess the likelihood that Boima may be civilly committed. The likelihood of such commitment may have increased since this matter was first before the district court, as the government has recently filed a certificate of mental disease or defect and dangerousness pursuant to 18 U.S.C. §

18

4246(a) with the United States District Court for the Eastern District of North Carolina, making possible Boima's commitment if he does not stand trial.[9] To be sure, the prospect of civil commitment is not determinative. *Sell*, 539 U.S. at 180 ("We do not mean to suggest that civil commitment is a substitute for a criminal trial."). But such a prospect may reduce the governmental interest at stake by "diminish[ing] the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." *Id.* Both the government and defense counsel should be prepared to assist the district court in thoroughly assessing this consideration on remand.

The district court should similarly evaluate the likelihood that Boima will remain in custody pending deportation in the event that he is not forcibly medicated and brought to trial. This consideration, too, may affect the

---

[9] Section 4246(a) provides for the commitment of an individual against whom charges have been dismissed "solely for reasons related to the mental condition of the person" if he or she suffers from a mental disease or defect for which "release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a). Dr. Lloyd noted in her initial report that Boima could be evaluated for commitment under this provision. *See* Report of Dr. Lloyd, SD 24. ("If the Court finds that the first prong of *Sell* has not been met by clear and convincing evidence, Mr. Boima may be subject to further evaluation under § 4246.").

government's interest in bringing him to trial by diminishing the risks normally attendant on forgoing the prosecution of someone charged with a serious offense.

The district court should also consider the substantial period that has passed since these charges were first brought when evaluating the government's interest in bringing Boima to trial. Four years have elapsed since the filing of the criminal complaint in July 2020, and Boima, who remains in confinement, has not yet been indicted on the charge lodged in that complaint. *Sell* affirms that pretrial confinement may mitigate the government's prosecutorial interest where a "defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed, see 18 U.S.C. § 3585(b))." *Sell*, 539 U.S. at 180. The parties proffer estimates of Boima's Guidelines range that, assuming a criminal history category of VI, are as low as 27 to 33 months or as high as 51 to 63 months, depending on factors such as acceptance of responsibility following a plea agreement and whether Boima qualifies as a career offender. Appellant's Br. at 47–48; *see* Appellee's Br. at 19 (citing Appellant's Br. at 47–48); U.S.S.G. § 5A (Sentencing Table). Were Boima's case to result in a conviction and reach the sentencing stage, the district court presumably would credit the four years of pretrial detention Boima has already served—plus

20

additional time accrued by that date—toward the sentence. *See Sell*, 539 U.S. at 180 (citing 18 U.S.C. § 3585(b)). This period would also potentially include the time needed to restore Boima to competency, which the experts estimate could take between four and eight months, as well as the time required for plea or trial proceedings and sentencing.

On remand, the district court should consider these special circumstances in evaluating the first *Sell* factor. Open questions remain regarding whether Boima will face civil commitment, release, or immigration custody pending deportation if not brought to trial in this case. The district court must consider the likelihood of these events occurring, as a low or moderate probability may limit or defeat their potential mitigating effects on the strength of the governmental interest in prosecution. *Cf. Gomes II*, 387 F.3d at 161 (assessing that "we need not consider how the potential for civil commitment impacts this case" because "[t]here is little, if any, evidence on the record to suggest that Gomes would qualify for civil commitment"). The court must also consider how time served and the additional time necessary for treatment and future proceedings relate to the potential sentence Boima faces, if convicted. These considerations are not exhaustive; the district court may ascertain that changes with the passage of time raise additional

21

considerations. This Court takes no position on the resolution of these questions at the present stage.

## III. CONCLUSION

For the foregoing reasons, we VACATE the order permitting Boima's involuntary medication and REMAND for further proceedings consistent with this opinion.