REVISED February 14, 2013
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 12-50028

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**
January 11, 2013

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JESSE JOE GUTIERREZ

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, JONES, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Defendant - Appellant Jesse Joe Gutierrez ("Gutierrez") appeals an order of the district court directing the Bureau of Prisons ("BOP") to involuntarily administer psychiatric medicine to him for the purpose of restoring his competency to stand trial. For the following reasons, we AFFIRM the order of the district court.

BACKGROUND

I.     Offense and Initial Commitment

In November and December of 2008, Gutierrez made over one hundred telephone calls to a television station in Austin, Texas, threatening to harm or

kill former President George W. Bush, Texas Governor Rick Perry, and both of their wives. This prompted an investigation by the Secret Service and a visit to Gutierrez by a Secret Service Agent, Nguyen Vu. On August 27, 2009, Gutierrez called Agent Vu and left a message on his voice mail. Gutierrez claimed to be delivering a message from God, and threatened to kill President Obama, former Presidents George W. Bush and George H.W. Bush, Agent Vu, and "all lawyers."

Gutierrez was arrested and charged with threatening to kill the President, a former President, and a federal law enforcement officer. On the government's motion, the district court ordered that Gutierrez be given a mental examination to determine his competency to stand trial as well as his sanity at the time of the alleged offenses. Dr. Dwyer, a BOP forensic psychologist, diagnosed paranoid schizophrenia and opined that Gutierrez could not understand the nature and consequences of the proceedings against him or assist in his defense. Dr. Dwyer offered no opinion as to Gutierrez's sanity at the time of his alleged offenses. Based on Dr. Dwyer's report, the district court found that Gutierrez was incompetent to stand trial and committed him to the BOP to be hospitalized for treatment and determination of whether he was likely to regain competency in the foreseeable future.

II.    Forensic Evaluation and First Administrative Hearing

In July 2010, Dr. Pyant, a BOP psychologist, and Dr. Williamson, a BOP psychiatrist, completed a forensic evaluation of Gutierrez. In the evaluation, Dr. Pyant and Dr. Williamson diagnosed Gutierrez with Schizophrenia, Undifferentiated Type. Dr. Pyant and Dr. Williamson found a substantial probability that Gutierrez's competency could be restored by treatment with psychiatric medicine, but opined that he was unlikely to regain competency without such medicine. Dr. Pyant and Dr. Williamson also stated that administration of psychiatric medicine would be "medically appropriate" and described a proposed course of treatment. However, Dr. Pyant and Dr.

Williamson noted that Gutierrez refused to take any medicine because he did not believe that he was mentally ill.

On July 21, 2010, the BOP held a hearing to determine whether Gutierrez could be involuntarily medicated on the grounds that he was gravely disabled or a danger to himself or others at the institution. The hearing officer, Dr. Newman, determined that involuntary medication was not justified on these grounds. Nonetheless, Dr. Pyant and Dr. Williamson "highly recommended" that Gutierrez be involuntarily medicated in order to restore his competency.

## III.   First Sell Hearing in the District Court

On December 17, 2010, the government moved for a hearing pursuant to Sell v. United States, 539 U.S. 166 (2003), to determine whether Gutierrez could be involuntarily medicated to restore his competency to stand trial. On February 3, 2011, after conducting a hearing, the district court issued an opinion analyzing the four factors set forth in Sell and ordering that Gutierrez be involuntarily medicated for this purpose. See United States v. Gutierrez, No. 1:09-CR-453, 2011 WL 386784 (S.D. Tex. Feb. 3, 2011). Gutierrez's counsel appealed this order, arguing that before the district court could order involuntary psychiatric medication for the purpose of restoring competency to stand trial, the BOP must hold a hearing in which a neutral hearing officer determines that medication is necessary for this purpose. Gutierrez's counsel also argued, based on the first Sell factor, that important government interests did not justify involuntary medication.

## IV.   Reversal of Involuntary Medication Order on Appeal

A panel of this court reversed the district court's order. See United States v. Gutierrez, 443 F. App'x 898 (5th Cir. 2011). The panel relied upon United States v. White, 431 F.3d 431, 433 (5th Cir. 2005), in which this court noted that the BOP had adopted by regulation mandatory procedures dealing with involuntary medication, and held that "when an inmate refuses medication, he

is entitled to an administrative hearing at the facility to determine whether he may be medicated against his will." Although White did not squarely address whether the BOP must determine in the first instance whether involuntary medication is necessary to restore a defendant's competency to stand trial, the panel held that such a determination is required.

The government pointed out on appeal that at the time of Gutierrez's administrative hearing, the BOP had proposed new regulations that would not require the BOP to determine whether involuntary medication is necessary to restore a defendant's competency. By the time the panel issued its opinion, these regulations had been adopted. The new regulations authorize the BOP to administer psychiatric medicine involuntarily only on the grounds that an inmate "is dangerous to self or others, poses a serious threat of damage to property affecting the security or orderly running of the institution, or is gravely disabled (manifested by extreme deterioration in personal functioning)." 28 C.F.R. § 549.46(a)(7). The regulations further state that "[o]nly a Federal court of competent jurisdiction may order the involuntary administration of psychiatric medication for the sole purpose of restoring a person's competency to stand trial." 28 C.F.R. § 549.46(b)(2). However, the panel held that the BOP was required to follow the regulations in place at the time of the hearing. Furthermore, the panel held that the BOP must apply the earlier 1992 regulations on remand in order to avoid the "improper retroactive effect" that would be caused by applying the new regulations.

V.    Second Administrative Hearing

On remand, the district court requested that the BOP hold a new administrative hearing in accordance with the panel's directions. Dr. Pyant and Dr. Williamson submitted a new evaluation to the hearing officer recommending once again that Gutierrez be involuntarily medicated to restore his competency and opining that "no other less intrusive means are available to treat his mental

4

illness and achieve competency restoration." The hearing officer, Dr. Zula, concluded that involuntary medication was "in [Gutierrez's] best medical interest" and was likely to restore his competency. However, Dr. Zula noted that "[s]econdary to the Supreme Court Sell decision, we are unable to treat Mr. Gutierrez involuntarily for the purpose of restoring him to competency to stand trial; that authority is restricted to the Court." Gutierrez appealed the hearing officer's decision, stating: "I don't need medicine. Your government is broken and corrupt." Gutierrez also complained about his mail, discrimination, and delay by the courts. The warden rejected Gutierrez's appeal and referred the matter back to the district court.

## VI.    Second Sell Hearing in the District Court

On January 4, 2012, the district court held a second hearing to determine whether Gutierrez could be involuntarily medicated. In a subsequent order addressing the four Sell factors, the district court first held that "[t]wo equally important government interests weigh heavily in favor of involuntary treatment": the government's interest in "bringing to trial an individual accused of a serious crime," and the government's interest in "avoiding the alternatives to forced medication and trial." The district court stated that "[o]nly one alternative exists if Gutierrez does not become competent and cannot be prosecuted: he will spend the rest of his life in a hospital." Gutierrez's counsel argued that there is no important government interest in prosecuting a defendant who almost certainly would not be convicted due to the significant, uncontested evidence of his insanity at the time of the offense. The district court responded that "[t]he rule announced in Sell would be a dead letter if courts accepted Gutierrez's argument, which begs the question of whether, on the merits, Gutierrez will prove he was insane when the offense occurred." The district court further stated that although there was "little doubt that Gutierrez

will ultimately be found insane, Gutierrez nevertheless bears the burden of proving this affirmative defense."

Addressing the second Sell factor, the district court found that medication is substantially likely to render Gutierrez competent to stand trial. The district court noted that, as part of this analysis, it must determine whether the medication will produce side effects that will interfere significantly with Gutierrez's ability to assist counsel in conducting a trial defense. However, the district court did not discuss this issue other than to note that the 2010 forensic evaluation had concluded that treatment was "substantially unlikely" to have such side effects.

Addressing the third Sell factor, the district court found that no alternative, less intrusive treatments are likely to achieve substantially the same results. The district court noted that no one, including Gutierrez, had ever argued that any less intrusive treatments would achieve the same results. The district court further noted that "every expert appears to agree . . . that only medication can help Gutierrez regain competence, because the nature of his psychosis is such that he has no idea he is ill, and so is unable and unwilling to accept other forms of therapy." Although Gutierrez argued that the hearing officer's report failed to make a finding that less intrusive methods were unlikely to succeed, the district court rejected this argument. The district court noted that the hearing officer's report had indicated that alternative treatments were considered, and suggested that the report's subsequent silence on the matter implied that these alternatives had been rejected. The district court also noted that the hearing officer, Dr. Zula, had testified at the second Sell hearing that no alternative treatments were likely to succeed. Finally, addressing the fourth Sell factor, the district court found that medication was medically appropriate and in Gutierrez's best interests.

The district court also rejected Gutierrez's argument that he was being denied due process because the administrative hearing did not fully comply with the 1992 regulations. The district court explained that "[t]he most important issue, and the one that appears to have motivated the Fifth Circuit's holding in this case, appears to be . . . the requirement of having the hearing before an independent, nontreating psychiatrist." The district court found that "[a]lthough the October 21, 2011 Hearing may not have perfectly complied with the 1992 regulations, it did meet the substantive due process concerns raised by the Court of Appeals." The district court also found that "any further effort by the Government to obtain administrative relief would be futile" because BOP officials believed, based on the advice of Department of Justice lawyers, that "they have no authority under Sell to actually order and carry out forced medication solely for the purpose of making a defendant competent for trial." Accordingly, the district court held that the government had properly exhausted administrative remedies and complied with due process requirements. The district court concluded that it was appropriate to order forced medication under the Sell analysis. See United States v. Gutierrez, No. 1:09-CR-453 (S.D. Tex. Jan. 10, 2012) (ECF No. 69).

## STANDARD OF REVIEW

In reviewing a district court's order to medicate a defendant involuntarily, we review findings of fact for clear error and conclusions of law de novo. United States v. White, 431 F.3d 431, 433 (5th Cir. 2005). "[W]hether the government's asserted interests are sufficiently important is a legal issue subject to de novo review." United States v. Palmer, 507 F.3d 300, 303 (5th Cir. 2007).

## DISCUSSION

An individual "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." Washington v. Harper, 494 U.S. 210, 221 (1990). However, "in certain instances" which "may be rare," the

7

Constitution permits the government "involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial." Sell v. United States, 539 U.S. 166, 179-80 (2003). First, a court must determine that "important governmental interests are at stake." Id. at 180. Second, the court must determine that involuntary medication "will significantly further" those interests – that is, that "administration of the drugs is substantially likely to render the defendant competent to stand trial" and is "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." Id. at 181. Third, the court must determine that involuntary medication "is necessary to further those interests" – that is, that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results." Id. Fourth, the court must determine that "administration of the drugs is medically appropriate" – that is, "in the patient's best medical interest in light of his medical condition." Id.

I.    Compliance with Regulatory Procedure

The prior 1992 version of CFR § 549.43(a)(5) required that a psychiatrist hearing officer "determine whether treatment or psychotropic medication is necessary in order to attempt to make the inmate competent for trial." Gutierrez's counsel argues that the government still has not complied with this procedure because the hearing officer did not make a specific finding that medication was "necessary" for this purpose. It appears that the BOP declined to use the word "necessary" because it viewed such a finding as tantamount to an approval of involuntary medication. As the BOP correctly noted, only a district court can make the quintessentially legal determination of whether the government's interest in prosecution overrides a defendant's liberty interest in avoiding forced medication.

In Gutierrez's prior appeal, this court described the procedure under the 1992 regulations as a "bifurcated process" under which "[t]he BOP made medical findings: whether medication was necessary and effective to render a defendant competent" and "[t]he district court . . . made a legal determination: whether the person could, consistent with the Constitution and substantive due process, be forced to receive medication." Gutierrez, 443 F. App'x at 903. We emphasized that requiring the government to "satisfy a psychiatrist not involved in [an inmate's] treatment that medication [is] justified as a medical determination" served to "protect the inmate's substantive right to be free from forced medication." Id. at 903 & 906. Accordingly, the question is whether the BOP adequately made the medical findings required by Sell: whether medication is substantially likely to render a defendant competent to stand trial, whether less intrusive treatments are likely to achieve substantially the same results, and whether medication is "medically appropriate."

In this case, Dr. Zula, a neutral hearing officer, concluded after a proper hearing that involuntarily medicating Gutierrez would be in his best medical interests, would likely restore his competency, and was the only treatment that had any chance of success. Although Dr. Zula could have been more explicit on the last point in her report, it is clearly implied by the report and confirmed in her testimony before the district court. Moreover, none of these conclusions is actually in dispute. No person involved with this case has ever suggested that medication is unlikely to render Gutierrez competent to stand trial or that any alternative treatment is likely to achieve the same results. And although Gutierrez personally believes that he is not mentally ill and does not need medication, no one else has seriously suggested that medication would not be in his best medical interest. We find that the BOP satisfactorily complied with the 1992 regulations.

II.    Important Government Interests

In Sell, the Supreme Court provided the following guidance on determining whether important government interests are at stake:

> The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In both instances the Government seeks to protect through application of the criminal law the basic human need for security.
> . . .
>
> Courts, however, must consider the facts of the individual case in evaluating the Government's interest in prosecution. Special circumstances may lessen the importance of that interest. The defendant's failure to take drugs voluntarily, for example, may mean lengthy confinement in an institution for the mentally ill—and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime. We do not mean to suggest that civil commitment is a substitute for a criminal trial. The government has a substantial interest in timely prosecution. And it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost. The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution. The same is true of the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed, see 18 U.S.C. § 3585(b)). Moreover, the Government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one.

Sell, 539 U.S. at 180.

Gutierrez's counsel does not contest that Gutierrez is charged with a "serious crime." Rather, counsel argues that special circumstances lessen the government's interest in prosecution. Counsel first points to the "strong likelihood that [Gutierrez] will continue to be institutionalized," apparently referring to the possibility of civil commitment. Second, counsel argues that the time Gutierrez has already spent in custody, thirty-one months, is longer than the likely sentence he would receive upon conviction. Third, counsel argues that

forcibly medicating Gutierrez may undermine his right to a fair trial. Finally, counsel argues that there is no significant government interest in prosecuting Gutierrez because it is virtually certain that he would be found not guilty by reason of insanity.

## A. Possibility of Civil Commitment

This court and other circuits have held that the government's interest in prosecution is not diminished if the likelihood of civil commitment is uncertain. See, e.g., United States v. Nicklas, 623 F.3d 1175, 1178-79 (8th Cir. 2010); Palmer, 507 F.3d at 304; United States v. Bradley, 417 F.3d 1107, 1116-17 (10th Cir. 2005); United States v. Evans, 404 F.3d 227, 239 (4th Cir. 2005); United States v. Gomes, 387 F.3d 157, 161 (2d Cir. 2004). Under 18 U.S.C. § 4246, Gutierrez could be civilly committed only if a court finds "by clear and convincing evidence that [he] is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another." Similarly, under Texas law, Gutierrez could be civilly committed only if a judge or jury finds by clear and convincing evidence that he is likely to cause serious harm to himself or others, or is "suffering severe and abnormal mental, emotional, or physical distress" that causes "substantial mental or physical deterioration of [his] ability to function independently" and is "unable to make a rational and informed decision as to whether or not to submit to treatment." Tex. Health & Safety Code § 574.035(a)(2) (West 2010). To be "clear and convincing," the evidence "must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to [himself] or others; or (2) [his] distress and the deterioration of [his] ability to function." Id. § 574.035(e).

It is not clear that Gutierrez would be eligible for civil commitment under either federal or Texas law. Notably, the BOP concluded that involuntary

medication was not justified because Gutierrez did not present a danger to himself or others and was not severely disabled by his mental illness. This finding, of course, was made in the context of his commitment at a mental hospital and did not directly address his expected dangerousness or his ability to function upon release. Nonetheless, it does suggest that it is far from certain that Gutierrez would be eligible for civil commitment. Other than making threats over the telephone, the record contains no evidence of any past violence on his part.

Gutierrez's counsel argues that the district court's statement in its involuntary medication order that Gutierrez "will spend the rest of his life in a hospital" if he "does not become competent and cannot be prosecuted" was a factual finding that he would almost certainly be eligible for civil commitment. We do not believe that the district court intended this remark as a factual finding, and we do not interpret it as such. The district court did not even set forth the elements required for civil commitment, much less discuss how or why Gutierrez would satisfy them for the remainder of his life. In any event, if we viewed this statement as a factual finding, we would find it to be clearly erroneous based on the evidence in the record.

B.    Time Already Spent in Custody

Gutierrez is charged with threatening to kill the President and threatening to kill a former President, each of which carries a five-year statutory maximum, as well as threatening to kill a federal law enforcement officer with intent to interfere with the performance of official duties, which carries a ten-year statutory maximum. 18 U.S.C. §§ 115(b)(4), 871(a) & 879(a). Accordingly, assuming conviction on all counts and consecutive sentencing, Gutierrez could receive a maximum of twenty years imprisonment. Gutierrez's counsel argues that the "likely" advisory guidelines range upon conviction would be fifteen to twenty-one months imprisonment, whereas the government suggests that the

range appears to be at least seventy-eight to ninety-seven months and "possibly" as high as 235 to 293 months.

This disagreement between the parties illustrates the difficulty of trying to estimate the applicable guidelines range without the benefit of a presentence report. Gutierrez's counsel suggests that the district court could have directed the U.S. Probation Office to prepare a report calculating the likely guidelines sentence in advance of the Sell hearing. This is not an acceptable solution. A presentence report involves an often lengthy investigation by a probation officer, after which both parties have an opportunity to object. An incompetent defendant is, by definition, unable to meaningfully participate in this process.

More importantly, even if it were possible to produce an accurate presentence report in advance of a Sell hearing, this would not take into account the broad discretion of the district judge to impose a sentence outside the advisory guidelines range. It is not appropriate either to require a district court to conduct a mock sentencing hearing and select a provisional sentence at a Sell hearing, or to prematurely speculate about a defendant's possible sentence in an interlocutory appeal. Accordingly, we follow the approach of several other circuits in comparing the time already served by Gutierrez with the statutory maximum authorized for his indicted offenses. See, e.g., Bradley, 417 F.3d at 1117; Evans, 404 F.3d at 239; Gomes, 387 F.3d at 160; but see United States v. Ruiz-Gaxiola, 623 F.3d 684, 694 (9th Cir. 2010) (using expected guidelines range rather than statutory maximum to determine "seriousness" of crime, as well as additional incarceration that the defendant would face upon conviction). Under this standard, the government's interest in prosecution is clearly not diminished.

Furthermore, even assuming Gutierrez would serve little or no prison time if tried and convicted, the government's interest in prosecution is not extinguished. In Palmer, we noted that "the government interest, as the [Supreme C]ourt explained in Sell, is not in seeing [a defendant] convicted, but

rather in ensuring that he is brought to trial." Palmer, 507 F.3d at 304. Aside from exacting retribution against and incapacitating Gutierrez himself, prosecution of the instant offenses expresses society's disapproval of such conduct and potentially deters others from engaging in it. Additionally, conviction would authorize the district court to impose a term of supervised release, which would facilitate monitoring of Gutierrez to ensure that he does not pose a threat to others.

C.    Right to a Fair Trial

In discussing the government's interest in bringing a defendant to trial, the Supreme Court in Sell stated also that "the Government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one." Sell, 539 U.S. at 180. The Court has also suggested that psychiatric medication may impinge upon a defendant's right to a fair trial by adversely affecting his "outward appearance, . . . the content of his testimony on direct or cross examination, his ability to follow the proceedings, or the substance of his communication with counsel." Riggins v. Nevada, 504 U.S. 127, 137 (1992). As explained further in Justice Kennedy's concurrence, the concerns with a defendant's "outward appearance" arise from the possibility that medication will "alter[] his demeanor in a manner that will prejudice his reactions and presentation in the courtroom." Id. at 142 (Kennedy, J., concurring). If a defendant testifies, his "demeanor can have a great bearing on his credibility, persuasiveness, and on the degree to which he evokes sympathy." Id. "[S]erious prejudice could result if medication inhibits the defendant's capacity to react and respond to the proceedings and to demonstrate remorse or compassion." Id. at 143-44. Antipsychotic drugs may cause the defendant to be "restless and unable to sit still"; may cause "tremor of the limbs, diminished range of facial expression, or slowed movements and speech"; and may cause extreme drowsiness. Id. at 142-43.

14

The concern expressed by Gutierrez's counsel is not comparable to the concerns recognized by the Supreme Court as legitimate. In essence, his argument is that medication will undermine Gutierrez's insanity defense by making him appear to be more sane. As other circuits have noted, an incompetent defendant simply cannot be tried, regardless of the defense he wishes to present. See Gomes, 387 F.3d at 162. If an insanity defense could not be successfully advanced by a competent defendant, it would not exist. At trial, Gutierrez could present evidence of his insanity at the time of his alleged offense and could of course point out that his demeanor had been altered by involuntary medication. Furthermore, "a defendant does not have an absolute right to replicate on the witness stand his mental state at the time of the crime." United States v. Weston, 255 F.3d 873, 884 (D.C. Cir. 2001). We find that involuntary medication would not interfere with Gutierrez's right to a fair trial.

D.    Likelihood of Successful Insanity Defense

Although Gutierrez's counsel argues that a verdict of not guilty by reason of insanity is virtually certain if Gutierrez is restored to competency and prosecution is resumed, this is not necessarily so. As the government points out, Gutierrez could decide to dispute his guilt by arguing that he did not have the requisite mens rea at the time he made the alleged threats. Gutierrez could alternately decide that pleading guilty and accepting a possibly short sentence is preferable to risking indeterminate civil commitment with an insanity plea. Or, as Gutierrez's counsel predicts, he could choose to plead not guilty by reason of insanity. Because Gutierrez himself is currently incompetent to stand trial due to mental illness, he cannot explain what he would do if restored to competency. Given this uncertainty and the variety of possible outcomes, it does not follow that prosecution is unnecessary.

Furthermore, even if it were certain that Gutierrez would successfully plead not guilty by reason of insanity, the government would continue to have

an interest in prosecution due to the shifted burden of proof for insanity acquitees in civil commitment proceedings. Under the Insanity Defense Reform Act, a defendant found not guilty by reason of insanity is automatically committed unless he can prove "that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." 18 U.S.C. § 4243. If the charged offense involved "bodily injury to, or serious damage to the property of, another person, or . . . a substantial risk of such injury or damage," the defendant must prove his lack of dangerousness by clear and convincing evidence; otherwise it must be proven by a preponderance of the evidence. Id. The Tenth Circuit, apparently the only circuit to address the question in a published opinion, has held that "the crime of making a threat against the President of the United States in violation of 18 U.S.C. § 871 necessarily involves a substantial risk of bodily injury to another person or damage to another person's property." United States v. Gilgert, 314 F.3d 506, 515 (10th Cir. 2002).

Under normal civil commitment procedures, the government must prove by clear and convincing evidence that Gutierrez's release would create a substantial risk to others. Making Gutierrez prove by clear and convincing evidence that his release would not create substantial risk to others is a very different standard. In a case such as this, where it is not clear whether Gutierrez has the inclination to act on his threats, the difference in burdens could well determine the outcome of a civil commitment proceeding. Moreover, it is worth noting that this difference in burdens is not merely a procedural anomaly or accident – the Insanity Defense Reform Act represents a clear legislative judgment that persons who have in fact committed crimes but have not been held legally responsible due to insanity should be presumed dangerous rather than not dangerous.

CONCLUSION

The district court's order approving involuntary medication for the purpose of restoring Gutierrez to competency is AFFIRMED. The case is remanded to the district court for further proceedings.