# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2023

Lyle W. Cayce
Clerk

_____

No. 23-30030

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Bryant Lamont Harris,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CR-71-1

_____

Before Elrod, Ho, and Oldham, *Circuit Judges*.

Per Curiam:

Our previous opinion is WITHDRAWN. And the following is substituted in its place.

\*     \*     \*

Bryant Lamont Harris asserts that he is required by his religious faith to abstain from psychiatric medication. But because he is not competent to stand trial, the Government requested to involuntarily medicate him, and the district court granted the motion. We hold that Harris's religious beliefs, combined with his lengthy detention and his potential civil confinement,

lessen the Government's interests in forcible medication. We accordingly remand the case for further proceedings consistent with this opinion.

## I.

Harris was charged for threatening to assault a federal judge in violation of 18 U.S.C. § 115(a)(1)(B). In February 2020, the FBI received information from the United States Marshals regarding threats made against Judge Susie Morgan and her staff. In response, FBI agents were dispatched to conduct interviews with Judge Morgan and her staff.

Based on the interviews, the agents determined that a male who identified himself as Bryant Lamont Harris had contacted Judge Morgan's chambers via telephone and complained about the New Orleans Police Department. Harris asserted that he was an Army veteran and had been expertly trained in marksmanship. He then asked how many security personnel were assigned to Judge Morgan. When asked why he needed that information, he replied, "I need to know how many people I need to take out to get to the Judge." He then said, "I'm not hiding" and "I don't give a f---," and then hung up the phone. The FBI later learned that Harris had contacted Judge Morgan's chambers several times before.

Harris was subsequently arrested, detained, and indictment for threatening to assault a federal judge in violation of 18 U.S.C. § 115(a)(1)(B). Shortly after his arrest, Harris underwent a behavioral health evaluation. Among other things, the evaluation noted Harris's delusional belief that he was offered "multiple women and $500k a month contract to join the Illuminati" due to his "special gifts."

Given his delusions, the district court held a hearing to determine whether Harris was competent to stand trial. The court determined that Harris was incompetent and ordered that he be committed to the custody of the Attorney General. Specifically, the order stated that the Attorney General

"shall hospitalize Harris for treatment in a suitable facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." The court also ordered the Attorney General to provide "reports on [Harris's] mental competency" throughout the confinement period. Harris appealed the district court's incompetency determination, and we affirmed. *United States v. Harris*, No. 21-30326, 2022 WL 1044915 (5th Cir. Apr. 7, 2022).

Toward the end of the confinement period, the district court received a report from Forensic Psychologist Brianna Glover. The report noted that Harris remained incompetent to stand trial. Furthermore, because Harris had been refusing medication, the report also recommended that Harris be involuntary treated with psychotropic medication. In light of that recommendation, the district court held a status conference and ordered the parties to submit briefing on the first so-called "*Sell* factor" (i.e., whether the Government has an important interest to warrant involuntary medication). *Sell v. United States*, 539 U.S. 166, 180 (2003). The district court also issued an order directing the Bureau of Prisons to prepare an addendum outlining in detail the proposed treatment plan and other details pertinent to the *Sell* factors.

The court then conducted another hearing once it received the addendum. During that hearing, Harris raised a religious objection to being involuntarily medicated, without identifying a particular source of law. The district court denied the objection, concluding that: (1) the Government had a compelling interest in prosecuting Harris's crime, which was not outweighed by Harris's religious liberty interests; and (2) the Government satisfied the four *Sell* factors. Thus, the court ordered that Harris "shall be involuntarily medicated, in an attempt to render him competent to stand trial."

Harris timely appealed. "In reviewing a district court's order to medicate a defendant involuntarily, we review findings of fact for clear error and conclusions of law *de novo*." *United States v. Gutierrez*, 704 F.3d 442, 448 (5th Cir. 2013). "A factual finding is not clearly erroneous as long as it is plausible in light of the record read as a whole." *United States v. Dinh*, 920 F.3d 307, 310 (5th Cir. 2019) (citation and quotation marks omitted).

## II.

To forcibly medicate a criminal defendant for the purpose of restoring his competency to stand trial, the Government must establish that: (A) "important governmental interests are at stake," taking into account that "[s]pecial circumstances may lessen the importance of that interest"; (B) "involuntary medication will significantly further those . . . interests"; (C) "involuntary medication is necessary to further those interests"; and (D) "administration of the drugs is medically appropriate." *Sell*, 539 U.S. at 180–81 (2003). Each factor must be proved by clear and convincing evidence. *United States v. James*, 938 F.3d 719, 723 (5th Cir. 2019).

Here, we need only consider the first *Sell* factor. There are two "[s]pecial circumstances" that lessen the Government's interests and necessitate reversal of the district court's forcible-medication order. *Sell*, 539 U.S. at 180.

First, Harris has served significant time as a pre-trial detainee. He has been detained since his arrest on February 14, 2020. As of October 2023, he has been detained for almost 44 months. If the Government was allowed to forcibly medicate Harris, the psychiatrist indicated that it would take four-to-eight months before Harris could stand trial. So by the time of his hypothetical trial, Harris would have been incarcerated for 48 to 52 months. And that substantially exceeds the applicable Guidelines range for his offense, which is only 37 to 46 months.

True, the Government has an important interest in "bringing to trial an individual accused of a serious crime." *Sell*, 539 U.S. at 180. And even if Harris was eventually sentenced to time served, that would not extinguish the Government's interest in securing his conviction. *James*, 959 F.3d at 664; *see also id.* ("The government bears an interest not in punishing her per se but in trying her and vindicating the law publicly."). But "not extinguished" is not the same as "not lessened." And on this point, *Sell* is clear: "[T]he possibility that [Harris] has already been confined for a significant amount of time" serves as a "[s]pecial circumstance[]" that "lessens[s]" the Government's interest in bringing him to trial. 539 U.S. at 180.

Second, religious faith constitutes a "[s]pecial circumstance" that lessens the Government's interest in forcible medication. In *Sell*, the Court listed a series of non-exhaustive and case-specific special circumstances that courts should consider in making forcible-medication decisions. The Court explained that, while the Government has an interest in bringing defendants to trial, it "has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one." *Sell*, 539 U.S. at 180. And the defendant's special circumstances can lessen the Government's trial interests. *Id.* True, the special circumstances listed by the *Sell* Court were purely secular—things like the potential for future civil confinement of the defendant and the time already served by the defendant. *Id.* If such secular circumstances are important enough to lessen the Government's interest in prosecution, however, we believe religious liberty must be at least as important. *Cf. Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam).

Here, Harris faces a pending civil-confinement hearing in North Carolina. Moreover, he asserts that his religious belief as a Jehovah's Witness prevents him from taking medication. He further asserts that forcible medication would violate his "constitutionally protected liberty." The Government does not dispute that Harris's religious faith can qualify as a

"special factor" under *Sell*. *See* Red Br. at 13–15; *cf. Ramirez v. Collier*, 595 U.S. 411, 426 (2022). Harris's religious beliefs, combined with his lengthy detention and his potential civil confinement, thus lessen the Government's interests under the first *Sell* factor.

We hasten to emphasize the limits in today's holding. We do not hold that religious faith constitutes a get-out-of-jail-free card. We also do not hold that all religious objections eliminate the Government's interests under the first *Sell* factor. We hold only that religious liberty *can* constitute a "special circumstance" under *Sell*, and that Harris properly raised a religious objection to forcible medication here. That well-taken special circumstance, combined with other factors identified above, necessitates the district court's reevaluation of the Government's efforts to forcibly medicate him.

The district court's order is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.