**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 5, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.**   **2024AP1144-CR**
             **2024AP1145-CR**
             **2024AP1146-CR**
**STATE OF WISCONSIN**

**Cir. Ct. Nos.**  **2022CF4463**
**2023CF2333**
**2023CF4713**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

C.G.B.,

      DEFENDANT-APPELLANT.

        APPEALS from orders of the circuit court for Milwaukee County: JEAN M. KIES, Judge. *Affirmed*.

        Before White, C.J., Donald, P.J., and Colón, J.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In this consolidated appeal, C.G.B. appeals from three involuntary medication orders.[1] C.G.B. argues that the circuit court erred by ordering the involuntary administration of medication to restore his competency to proceed. We reject C.G.B.'s arguments and affirm.

## BACKGROUND

¶2 This consolidated appeal arises from three felony criminal cases. In Milwaukee County Circuit Court case No. 2023CF2333, C.G.B. was charged with failing to comply with the sex offender registry, a felony. In Milwaukee County Circuit Court case No. 2023CF4713, C.G.B. was charged with assault by a prisoner, a felony, for spitting on a Milwaukee County Jail employee.

¶3 After being charged in the 2023 cases, C.G.B. became subject to revocation proceedings in Milwaukee County Circuit Court case No. 2022CF4463. In the 2022 case, C.G.B. had entered a plea of guilty to one count of throwing or discharging bodily fluid at a public safety worker, a felony, and one count of criminal trespass, a misdemeanor, and was placed on probation with an imposed and stayed sentence.[2]

---

[1] We note that this appeal arose before the new rules setting forth an expedited procedure for involuntary medication appeals took effect. S. Ct. Order No. 23-05, 2024 WI 20 (eff. July 1, 2024). The new rules require the subject of the order being appealed to be referred to "by one or more initials or other appropriate pseudonym or designation." WIS. STAT. RULE 809.109(6). Although the new rules do not apply, on our own motion we nonetheless order the use of initials for privacy purposes as this appeal addresses C.G.B.'s mental health.

[2] The revocation summary documented C.G.B.'s charges in the 2023 cases and other uncharged conduct that violated the terms of his probation, including an allegation that C.G.B. had threatened to kill his probation agent while exposing his genitals to her.

¶4     Relevant to this appeal, on June 6, 2024, the Department of Health Services (DHS) moved for a hearing and an involuntary medication order to treat C.G.B. to competency in all three cases.  DHS also submitted an individual treatment plan for C.G.B. prepared by Dr. Wilbur Sarino, a staff psychiatrist at the Wisconsin Resource Center, who reviewed C.G.B.'s records and met with C.G.B. on four occasions.  Dr. Sarino diagnosed C.G.B. with schizoaffective disorder and proposed treating him with antipsychotic medication to restore his competency to stand trial.

¶5     On June 12, 2024, a hearing was held.  At the hearing, the State called Dr. Sarino.  Dr. Sarino's testimony included a discussion of the proposed medication.  Dr. Sarino also indicated that when he informed C.G.B. about the court proceeding, C.G.B. started to spit at Dr. Sarino and threatened to kill him.

¶6     After hearing argument from the parties, the circuit court ordered involuntary medication.  C.G.B. now appeals.

## DISCUSSION

¶7     A defendant who is incompetent to stand trial may be subjected to involuntary medication in order to restore him or her to competency.  *State v. Fitzgerald*, 2019 WI 69, ¶13, 387 Wis. 2d 384, 929 N.W.2d 165.  An order for involuntary medication must comply with the four factor test set forth in *Sell v. United States*, 539 U.S. 166 (2003).  *See Fitzgerald*, 387 Wis. 2d 384, ¶¶26-29.  Under *Sell*, a court must find that:  (1) important government interests are at stake; (2) involuntary medication will further the government's interests; (3) the involuntary medication is necessary; and (4) the administration of drugs is medically appropriate.  *Id.*, 539 U.S. at 180-81.  "The State is required to prove

3

the factual components of each of the four factors by clear and convincing evidence."[3] *State v. Green*, 2021 WI App 18, ¶16, 396 Wis. 2d 658, 957 N.W.2d 583.

¶8 On appeal, C.G.B. appears to argue that the first and the third *Sell* factors were not supported by clear and convincing evidence. We address those factors below.

## I. First *Sell* Factor

¶9 The first *Sell* factor asks whether an important governmental interest is at stake. *Sell*, 539 U.S. at 180. C.G.B. argues that the State's interest is not important because his crimes are "the lowest classifications under Wisconsin law," his sex offender registration offense is "regulatory in nature," and he did not spit on "a random stranger," but in response "to others who approached him in confined settings[.]"

¶10 We disagree. C.G.B. faced criminal lability for three felonies: (1) throwing or discharging bodily fluid at a public safety worker, a Class I felony; (2) failing to comply with the sex offender registry, a Class H felony; and (3) assault by a prisoner for spitting on a jail employee, a Class I felony. While these offenses do not carry the highest felony classifications, they are nonetheless felonies as opposed to misdemeanors. *See* WIS. STAT. § 939.50 (2021-22).[4] The

---

[3] Wisconsin courts have not specified the applicable appellate standard of review. *See State v. Green*, 2021 WI App 18, ¶18, 396 Wis. 2d 658, 957 N.W.2d 583. Here, we reach the same conclusion regardless of whether we apply a "clearly erroneous" or "*de novo*" standard of review. Thus, we do not resolve or further discuss the standard of review.

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

State has an important interest in holding C.G.B. accountable for these offenses. The purpose of the sex offender registry is to protect the public. *See State v. Smith*, 2010 WI 16, ¶26, 323 Wis. 2d 377, 780 N.W.2d 90. In regards to the throwing bodily fluids felony and the assault by a prisoner felony, the State has an interest in holding individuals accountable for endangering the security of others. Contrary to C.G.B.'s suggestion, this interest does not change depending on whether the victim is "a random stranger" or an employee of a jail or correctional institution.

¶11 Next, C.G.B. asserts that he had a "substantial amount of pretrial credit[.]" *Sell* states that pretrial confinement for "a significant amount of time" may weigh against the government's interest in involuntary medication. *Sell*, 539 U.S. at 180. Here, C.G.B.'s pretrial credit, which totals 162 days, does not constitute "a significant amount of time" given his overall sentencing exposure. *See United States v. Tucker*, 60 F.4th 879, 887 (4th Cir. 2023) (finding that the government retained a substantial interest in prosecuting the defendant because the defendant's pre-trial detention would not last considerably longer than his likely sentence). On the sex offender registry offense, C.G.B. faces a maximum prison sentence of six years. *See* WIS. STAT. §§ 301.45(6)(a)1., 939.50(3)(h). On the assault by a prisoner offense, C.G.B. faces a maximum prison sentence of three years and six months, which by law is required to be consecutive to any offense for which the person was in custody when he or she committed it. WIS. STAT. §§ 946.43(2m)(a), 939.50(3)(i). In addition, on the throwing or discharging bodily fluid offense, C.G.B. faces an imposed and stayed sentence of eighteen months of initial confinement and two years of extended supervision.

¶12    Lastly, C.G.B. asserts in a conclusory fashion that he "could be" civilly committed under WIS. STAT. ch. 51. *Sell* states that "lengthy confinement in an institution for the mentally ill" may weigh against the government's interest in involuntary medication. *Sell*, 539 U.S. at 180 (emphasis added). As the State observes, federal courts addressing this issue have required evidence that a lengthy civil commitment is possible before it can impact the disposition of the first *Sell* factor. *See United States v. Cruz*, 757 F.3d 372, 388 (3d Cir. 2014); *United States v. Gutierrez*, 704 F.3d 442, 450 (5th Cir. 2013); *United States v. Dillon*, 738 F.3d 284, 294-95 (D.C. Cir. 2013). Here, C.G.B. does not provide any argument or evidence that a lengthy civil commitment is a realistic possibility or that he is even eligible for a civil commitment.

## II.    Third *Sell* Factor

¶13    The third *Sell* factor addresses whether involuntary medication is necessary. *Id.*, 539 U.S. at 181. At the hearing, Dr. Sarino testified that C.G.B. refused to take antipsychotic medication voluntarily, and that additional education regarding the medications would not work. The circuit court accepted this testimony and found that no viable alternatives to involuntary medication existed, and thus, involuntary medication was necessary.

¶14    C.G.B. complains that he had been restored to competency in the past without the use of involuntary medications. C.G.B., however, does not provide support for this assertion in the record.[5] We will not develop arguments for the parties. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct.

---

[5] The record citation C.G.B. provides is for an order appointing counsel.

6

App. 1992) (stating that this court "cannot serve as both advocate and judge"). In addition, we note that the record suggests that in the past, C.G.B. may have taken medication voluntarily. Thus, an order for involuntary medication may not have been needed.

¶15 Therefore, for all of the reasons above, we conclude that the circuit court properly ordered involuntary medication in C.G.B.'s three felony cases, and we affirm.[6]

> *By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] We note that we recently vacated an order for involuntary medication because it did not comply with the *Sell* factors. *See* *State v. J.D.B.*, 2024 WI App 61, __ Wis. 2d __, __ N.W.2d __. However, *J.D.B.* is distinguishable from this case. J.D.B. was a first-time offender who was charged with a single Class H felony and held in pre-commitment custody for 318 days. *Id.*, ¶¶7, 53. Additionally, "the record reflect[ed] a significant potential for [J.D.B.'s] future civil commitment[.]" *Id.*, ¶41. As discussed above, C.G.B. is a repeat offender who was held in custody for only 162 days while facing a substantially longer period of imprisonment in three different cases. Further, unlike in *J.D.B.*, C.G.B. does not contend that the proposed treatment plan was not adequately individualized. *See id.*, ¶54.