**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-13885

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

SHAWN MICHAEL CHALIFOUX,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cr-00015-CEM-LHP-1

_____

Before LUCK, LAGOA, and ABUDU, Circuit Judges.

PER CURIAM:

Shawn Michael Chalifoux has taken this interlocutory appeal to challenge an order of the district court overruling his objections to a report and recommendation ("R&R") and granting the

government's motion to involuntarily administer him antipsychotic medication.[1]   After careful review of the record and the briefs, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In February 2021, a grand jury indicted Chalifoux for one count of conspiracy to distribute 50 grams or more of methamphetamine, 21 U.S.C. §§ 846 & 841(b)(1)(A) ("Count One"), one count of distribution of heroin, 21 U.S.C. § 841(a)(1) & (b)(1)(C) ("Count Two"), and two counts of distribution of five grams or more of methamphetamine, 21 U.S.C. § 841(a)(1) & (b)(1)(B) ("Counts Three and Four").  Chalifoux entered into a plea agreement with the government and pled guilty to Count One.  Twice before sentencing, however, Chalifoux's counsel withdrew, and new attorneys were appointed.

Before the rescheduled sentencing hearing was set to take place, Chalifoux moved to withdraw his guilty plea, arguing that his prior counsel had not adequately explained the plea agreement to him.  The district court held a hearing on the motion, during which the question of Chalifoux's competency was raised for the first time, by Chalifoux's counsel.  Chalifoux's counsel orally moved for a psychological evaluation, without objection, and the court granted the motion.

---

[1] *United States v. Chalifoux*, No. 6:21-cr-15, 2024 WL 4804829 (M.D. Fla. Aug. 27, 2024), *report and recommendation adopted*, 2024 WL 4803228 (M.D. Fla. Nov. 15, 2024).

In February 2022, a magistrate judge appointed Dr. Randy K. Otto, Ph.D., to examine Chalifoux and render an opinion regarding his competency.  Dr. Otto filed a forensic psychological evaluation, recommending that the district court consider Chalifoux "unable to understand the nature of the consequences of the proceedings against him and assist properly in his defense as a result of a mental disorder (i.e., paranoid thinking)."  After receiving Dr. Otto's report, the government moved for a competency hearing under 18 U.S.C. § 4241, in part because Dr. Otto had not stated whether Chalifoux could be restored to competency.

A magistrate judge held a competency hearing in May 2022. Dr. Otto testified about his examination of Chalifoux and reiterated his conclusion that he was not competent.  He clarified that he believed Chalifoux could be restored to competency with treatment and that "the primary mechanism" for treatment "would be medication."  After the hearing, the government stated that there was a sufficient record from which to conclude that Chalifoux "is presently not competent to stand trial, and that he can be restored to competency with appropriate treatment."  In a written order, the magistrate judge agreed, finding Chalifoux incompetent due to a delusional disorder and ordering him committed to the custody of the Attorney General to be hospitalized for treatment.  *See* 18 U.S.C. § 4241(d)(1).[2]

---

[2] Chalifoux has twice appealed orders of the magistrate judge directly to this Court, but we dismissed those appeals for lack of jurisdiction.  *United States v.*

4                          Opinion of the Court                    24-13885

In September 2023, a Bureau of Prisons forensic psychologist reported, under 18 U.S.C. § 4241(d), that Chalifoux remained incompetent but that there was a substantial probability that he would be restored to competency in the foreseeable future if the court authorized treatment with antipsychotic medication. In light of that report, the United States moved for a hearing under *Sell v. United States*, 539 U.S. 166 (2003).

Under *Sell*, the government may involuntarily administer antipsychotic drugs to a mentally ill criminal defendant to render that defendant competent if it satisfies the requisite factors. *Id.* at 179. More specifically, *Sell* held that the government must show: (1) important government interests are at stake; (2) involuntary medication would significantly further the state interests in assuring a fair and timely trial; (3) involuntary medication is necessary to further the state interests; and (4) administration of the medication is medically appropriate, or "in the patient's best medical interest in light of his medical condition." *Id.* at 180–81; *see also United States v. Diaz*, 630 F.3d 1314, 1319 (11th Cir. 2011). The government argued that each factor was met and asked the district court to hold a hearing where it could make its showing on each factor.

The magistrate judge held a hearing on the *Sell* motion in May 2024. At that hearing, three witnesses testified: Dr. Sarah Burton and Dr. Shawn Rice, who were called by the government; and

---

*Chalifoux*, No. 23-12299, 2023 WL 8257872 (11th Cir. Nov. 29, 2023) (unpublished); *United States v. Chalifoux*, No. 23-13496, 2024 WL 706854 (11th Cir. Feb. 21, 2024) (unpublished).

Dr. Richart DeMier, who was called by Chalifoux.  Dr. Burton and Dr. Rice each testified that Chalifoux suffered from "delusional disorder, persecutory type."

Dr. Burton explained that Chalifoux had "fixed false beliefs" that were "of a paranoid nature" and that "various individuals were conspiring against him in some manner very specific to his legal proceedings."  She also explained that Chalifoux was unlikely to be restored to competency without antipsychotic medication. Throughout her testimony, Dr. Burton explained that, in her opinion, each of the last three *Sell* factors were met.  Of particular note, Dr. Burton explained that "less intrusive treatments" would not achieve the same results as medication because "there was no amount of talking or education that would convince" Chalifoux to think differently.  In fact, she explained, Chalifoux had attended group sessions but they did not help because Chalifoux could not make decisions "that are not rooted in delusions" and "[t]hose are the kinds of things that cannot be taught"; and instead, "need[ed] to be addressed with a medication program."

Dr. Rice, similarly, believed that the involuntary administration of antipsychotic medication would be in Chalifoux's best interest, medically appropriate, and substantially likely to restore Chalifoux to competency.  He testified that antipsychotic medication would be "considered the first-line treatment for individuals with chronic severe psychotic mental illnesses."  He also explained that, while antipsychotic medication can cause side effects, many of those effects are manageable with monitoring and consultation.

Dr. Rice had prepared a proposed treatment plan, which, in his view, would make it substantially likely that he would obtain competency.

Chalifoux's expert, Dr. DeMier, testified that, largely, he agreed with the government's experts. Moreover, he testified that he had attempted to interview Chalifoux twice, but Chalifoux had refused to talk to him. Dr. DeMier stated that he could not guarantee he would have agreed with the government's experts had he talked with Chalifoux, but he also could not say that he would have disagreed.

At the close of the hearing, the government argued that it had established each *Sell* factor by clear and convincing evidence. Chalifoux, on the other hand, argued that the government had not shown that involuntary medication would significantly further government interests, and that involuntary medication was not necessary because other forms of treatment might "prove[] to be a less intrusive and more useful tool" to restore his competency.

The magistrate judge prepared a thorough R&R recommending that the district court grant the government's motion to involuntarily administer Chalifoux medication. *See generally Chalifoux*, 2024 WL 4804829, at *1–21. The magistrate judge explained that the government had proven, by clear and convincing evidence, each of the *Sell* requirements because the evidence presented was "uncontroverted"; all three experts' testimonies supported involuntary medication on these facts. Given these facts,

24-13885                Opinion of the Court                7

the magistrate judge recommended that "medication be administered and monitored in accordance with Dr. Rice's proposed treatment plan."

Chalifoux objected to the R&R, arguing that he "was not able to testify" at the hearing.  The district court, reviewing Chalifoux's objections *de novo*, overruled them, reasoning that nothing had prevented Chalifoux from testifying; he simply had not asked to do so until after the R&R was prepared.  The court therefore granted the government's motion, and Chalifoux appealed.[3]

## II. STANDARDS OF REVIEW

In reviewing a district court's order granting the government's motion to involuntarily administer medication to a defendant, we review the first *Sell* factor *de novo* and the remaining three *Sell* factors for clear error.  *Diaz*, 630 F.3d at 1331.  Clear error is a deferential standard of review.  To be clearly erroneous, a finding of the district court must leave us with a "definite and firm conviction that a mistake has been committed."  *United States v. Isaac*, 987 F.3d 980, 990 (11th Cir. 2021) (quoting *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010)); *see also OHI Asset (VA) Martinsville SNF, LLC v. Wagner (In re Wagner)*, 115 F.4th 1296, 1303 (11th Cir. 2024) ("A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake

---

[3] We have jurisdiction.  *See Diaz*, 630 F.3d at 1330 n.12 (explaining that we have jurisdiction under the collateral order doctrine in these circumstances); *Sell*, 539 U.S. at 176–77 (same).

has been committed.'" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985))). "Therefore, '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *In re Wagner*, 115 F.4th at 1303 (quoting *Anderson*, 470 U.S at 574).

### III. DISCUSSION

On appeal, Chalifoux generally objects to the magistrate judge's R&R and contends that he should not be forced to take antipsychotic medication. While he concedes that the R&R correctly lays out the factual and procedural posture of the case, he reiterates his objections to the R&R. We discern no error: Chalifoux does not meaningfully challenge the first *Sell* factor and the factual findings on the three remaining factors were not clearly erroneous. *Diaz*, 630 F.3d at 1331.

The first *Sell* factor is whether "the government has an 'important' interest in going to trial." *Id.* (quoting *Sell*, 539 U.S. at 180). The R&R held that the government had shown it had such an important interest, and it addressed several factors in reaching that conclusion. For one thing, it explained that the offenses Chalifoux was charged with are serious. *See Sell*, 539 U.S. at 180 ("The Government's interest in bringing to trial an individual accused of a serious crime is important.").[4] The R&R also determined that no

---

[4] In concluding that the charged crimes were serious, the R&R analyzed: (1) the statutory maximum sentences Chalifoux faced for the charges; (2) Chalifoux's advisory sentencing guidelines range; and (3) the conduct underlying Chalifoux's charged offenses.

"special circumstances" lessened the importance of the government's interest on this record. *See id.* (noting that "[s]pecial circumstances may lessen the importance of th[e government's] interest [in prosecution]" and providing examples of such circumstances). Specifically, it reasoned that Chalifoux had not served extensive time in pretrial detention as compared to his anticipated prison term. In addition, there was no sign that Chalifoux might be subject to civil confinement nor any reason to think that involuntary medication might interfere with a potential insanity defense Chalifoux might raise at trial. Given these considerations, the magistrate judge concluded that "the United States ha[d] met its burden of proof by clear and convincing evidence that an important Government interest exists in this case."

On appeal, Chalifoux does not meaningfully contest the R&R's conclusions on this factor. When a party "makes only passing references to" a legal issue on appeal "or raises it in a perfunctory manner without supporting argument and authority," we typically deem that issue abandoned. *United States v. Esformes*, 60 F.4th 621, 635 (11th Cir. 2023) (quoting *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014)). Chalifoux's brief provides no analysis of this issue that might explain how the district court or magistrate judge might have erred, let alone enough argument to prove a reversible error. *See Murphy v. St. Paul Fire & Marine Ins. Co.*, 314 F.2d 30, 31 (5th Cir. 1963) ("It is elementary that the burden

is on the appellants to show error.").[5]  Yet, even if we were to ana-lyze the magistrate judge's ruling on the first *Sell* factor, we would still affirm.  The magistrate judge carefully applied the Supreme Court's opinion in *Sell*, as well as caselaw from this Court and other circuits, and cogently justified its conclusion that the government had an important interest in Chalifoux's prosecution.  *Chalifoux*, 2024 WL 4804829, at *12–17.[6]  On *de novo* review, we agree with this analysis, for the reasons expressed by the R&R.  *Diaz*, 630 F.3d at 1331.

Chalifoux does not show clear error on the remaining three *Sell* factors either.  *Diaz*, 630 F.3d at 1331.  As we noted above, clear error is a very deferential standard.  *See, e.g.*, *Isaac*, 987 F.3d at 990; *Rothenberg*, 610 F.3d at 624; *In re Wagner*, 115 F.4th at 1303.  When there is conflicting "evidence [that] would support a conclusion ei-ther way," a factfinder's decision "to weigh more heavily" one

---

[5] Decisions issued by the former Fifth Circuit are binding upon this Court. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1210 (11th Cir. 1981) (*en banc*).

[6] In reaching its decision, the magistrate judge discussed and considered vari-ous out-of-circuit authority.  *See, e.g.*, *United States v. Mackey*, 717 F.3d 569, 573 (8th Cir. 2013); *United States v. Gutierrez*, 704 F.3d 442, 451 (5th Cir. 2015); *United States v. Green*, 532 F.3d 538, 550 (6th Cir. 2008); *United States v. Evans*, 404 F.3d 227, 237 (4th Cir. 2005); *United States v. Hernandez-Vasquez*, 513 F.3d 908, 919 (9th Cir. 2008); *United States v. Velanzuela-Puentes*, 479 F.3d 1220, 1226 (10th Cir. 2007); *United States v. White*, 620 F.3d 401, 415 (4th Cir. 2010); *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 693–94 (9th Cir. 2010).  The R&R explained that, regardless of the differences between these circuits' approaches, the same conclusion would follow in this case.  Therefore, we need not address or en-dorse any of this caselaw to resolve this appeal; Chalifoux does not, in any event, argue that reliance on any of these cases was improper.

side's evidence "is not 'clearly erroneous.'" *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949). Here, though, there was not "evidence [that] would support a conclusion either way," *id.*; there was detailed and *uncontroverted* evidence from the government's experts that: (i) involuntary medication would "significantly further" the government's important interests; (ii) "alternative, less intrusive treatments were unlikely to achieve substantially the same results";[7] and (3) involuntary medication was "medically appropriate" in light of Chalifoux's delusional disorder. *Sell*, 539 U.S. at 181. Indeed, Chalifoux's expert agreed with various aspects of the government's expert's conclusions on these issues. *Yellow Cab Co.*, 338 U.S. at 342. Under these circumstances, we will not disturb the factfinder's view of the evidence.

As much as Chalifoux raises a discrete separate challenge on appeal, it is that he was not permitted to testify at the *Sell* hearing. Yet as the district court explained, Chalifoux never asked to testify in that proceeding until after the R&R was prepared. *See Williams v. McNeil*, 557 F.3d 1287, 1290 (11th Cir. 2009) (explaining that a district court "has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate

---

[7] As to whether "alternative, less intrusive treatments were unlikely to achieve substantially the same results," *Sell*, 539 U.S. at 181, Chalifoux does not meaningfully contest the expert testimony that antipsychotic medication is "the first-line treatment" for his disorder. Nor does he dispute that other treatments were attempted but did not succeed. His argument, before the magistrate judge, that other treatments may be just as effective is therefore speculative and unsupported by any record evidence.

judge"). In essence, Chalifoux's claim is that the magistrate judge reversibly erred in not *sua sponte* raising whether Chalifoux wanted to testify. He cites no authority in support of that position, *see Murphy*, 314 F.2d at 31, nor explains what he intended to testify about or how he was prejudiced by the magistrate judge's failure to consider his testimony, *see* FED. R. CRIM. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). He has not shown reversible error in this respect either.

### IV. CONCLUSION

For the reasons explained above, we affirm.

**AFFIRMED.**